Lawrence DUNPHY, Plaintiff–Appellant,

v.

Margaret McKEE, et al., Defendants–
Appellees.

No. 96–2266.

United States Court of Appeals,
Seventh Circuit.

Argued May 14, 1997.

Decided Jan. 22, 1998.

---

Michael G. Cheronis (argued), Oak Park, IL, for Plaintiff–Appellant.

Jessie Wang–Grimm, Office of the Attorney General, Chicago, IL, Michael P. Doyle (argued), Office of the Attorney General, Civil Appeals Division, Chicago, IL, Mitchell B. Katten, O'Rourke & Griffin, Chicago, IL, for Defendants–Appellees.

Before CUMMINGS, COFFEY, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Lawrence Dunphy has been trying for more than five years to pursue an action under 42 U.S.C. § 1983 against the warden and several staff members of the Statesville Prison Facility and the Illinois Department of Corrections. His efforts at the district court level were unavailing, however, because the lawyer the judge selected for him persistently failed to comply with the district court's scheduling and case management orders. Despite the fact that Dunphy himself conscientiously kept the court informed of his whereabouts, filed timely requests for continuances when he knew he could not be present (because he was incarcerated), and was ready to appear immediately after he was able to be back in Illinois, the district court eventually dismissed his case for want of prosecution. Dunphy appealed *pro se,* and we appointed counsel—unfortunately, the same counsel who performed so badly at the district court level. Under the circumstances of this case, we find that the court may have abused its discretion in ordering the dismissal without any explanation, and we remand for further proceedings.

On May 28, 1992, Dunphy filed a *pro se* action under § 1983 against the state defendants, Margaret McKee, Salvador Godinez, Edward Green, Gary Wintersteen, and Christopher Hughes, claiming that they violated his civil rights by disobeying a medical order to give him a single-person cell with a low bunk on a low gallery. Almost a year later, on April 9, 1993, the district court granted Dunphy's request for court-appointed counsel, naming attorney Michael Cheronis to represent him. In an inauspicious beginning, Cheronis failed to appear on June 17, 1993, at the first status conference after his appointment. The district court accordingly entered an order warning that "[s]hould counsel for plaintiff fail to appear for the next hearing this case will be dismissed for want of prosecution."

The next status conference was scheduled for July 13, 1994. Apparently Cheronis attended that one, at which the court scheduled a pretrial hearing for August 8, 1994, and entered an order directing Dunphy to appear at the hearing "either in person or be [sic] counsel in order to report to the court what has been done in this case and how he [sic] is to proceed." Again, the court cautioned that "[f]ailure to appear will result in this case being dismissed for want of prosecution." In spite of the warning, neither Dunphy (who was in prison) nor Cheronis appeared at the August hearing, and the court entered an order dismissing the case. On September 1, 1994, Dunphy personally wrote to the court asking for reinstatement of his case. The court granted his request and set a status hearing for July 11, 1995. After resetting the hearing several times, for reasons not disclosed in the record, the court on August 7, 1995, fixed September 12, 1995, as the date for the hearing.

September 12, 1995, came, but neither Dunphy nor his lawyer did. As before, the court entered an order dismissing Dunphy's case without prejudice for want of prosecution. Once again, Dunphy himself wrote to

the court asking for a new status hearing to be reset "to after April 1996," when he expected to be paroled back to Illinois. The court reopened the case and set the hearing for April 30, 1996, and warned again of a possible dismissal for want of prosecution if no one showed up. On March 7, 1996, well in advance of the April 30 date, Dunphy wrote to the court to ask that the hearing be pushed back until the summer. He explained that he would be paroled back to Illinois, from Colorado, on July 15, 1996, and thus he would not be available to attend until that time. Dunphy attached to his letter a printout of his Colorado Department of Corrections official time computation report, which showed that his mandatory release date was July 15, 1996, and furnished information about his earned time and eligibility for a reduction in sentence.

Notwithstanding Dunphy's March 7 letter, the court proceeded with the status conference on April 30, 1996. As before, Cheronis failed to show up, and Dunphy obviously could not appear. This time the court entered an order dismissing the case for want of prosecution. On May 8, 1996, the court reduced its order to a final judgment, from which Dunphy has appealed (not surprisingly, by filing his notice of appeal *pro se*).

Throughout the time the case was pending, Dunphy was careful to keep the court notified of his whereabouts. The record shows seven such change of address notices:

| | |
|---|---|
| Centralia Correctional Center | 6/18/92 |
| Sheridan Correctional Center | 8/6/92 |
| Chester Correctional Center | 9/1/92 |
| 6944 S. Aberdeen, Chicago | 12/21/92 |
| Cincinnati Ohio Correctional Center | 7/20/93 |
| Elgin Mental Health Center | 9/1/94 |
| Colorado Department of Corrections | 9/5/95 |

Not only that, but in at least one letter (informing the court about the Colorado facility), Dunphy thoughtfully furnished the court with the various aliases he used: "Lawrence Dunphy, AKA Timothy Feemster, Develin Williams." In the meantime, it appears that Cheronis was doing almost nothing with the case. In a footnote to his appellate brief, the point of which is unclear, Cheronis informs us that "[a]ppointed counsel had only one telephone conversation with Plaintiff during August 1994." At oral argument Cheronis

clarified that he meant that he had only one conversation with Dunphy during the entire period of his representation, rather than in that particular month, and that this conversation was all of two minutes long. It thus appears that although the district court was at all times aware of Dunphy's location, Cheronis (who claimed to have tried to contact Dunphy several times) was unable to find him during the entire three years of his representation, with the exception of the single phone call.

The legal question before us is one of first impression: do the standards for dismissing an action for want of prosecution in a case where an indigent plaintiff has court-appointed counsel, or counsel recruited by the court to serve in a *pro bono* capacity, vary at all from the standards that would apply if counsel were retained? Put in a slightly different way, are the guidelines governing the district court's discretion in the case of retained counsel, which we described at some length in *Ball v. City of Chicago*, 2 F.3d 752 (7th Cir.1993), adequate to cover the case of court-appointed counsel? If so, did the district court here abuse its discretion in dismissing Dunphy's case? If not, what additional considerations should be taken into account when counsel is court-appointed, and how does Dunphy's case fare under them?

We begin with several well established propositions. First, as the Supreme Court held in *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), the district courts have the authority to dismiss complaints "for failure ... to prosecute or to comply with ... any order of the court" on motion of the defendant, *id.* at 630, 82 S.Ct. at 1388, quoting Fed. R. Civ. P. 41(b), or sua sponte as part of the "control necessarily vested in courts ... to achieve the orderly and expeditious disposition of cases." 370 U.S. at 630–31, 82 S.Ct. at 1388. Dismissal for failure to prosecute is an extraordinarily harsh sanction, to which courts should resort "only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable." *In the Matter of Bluestein & Co.*, 68 F.3d 1022, 1025 (7th Cir.1995) (per curiam) (quot-

ing *GCIU Employer Retirement Fund v. Chicago Tribune Co.,* 8 F.3d 1195, 1199 (7th Cir.1993), in turn quoting *Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.,* 869 F.2d 1058, 1061 (7th Cir.1989) (emphasis omitted in GCIU)). Appellate review of these orders is only for abuse of discretion, see *Bluestein,* 68 F.3d at 1022; *Johnson v. Kamminga,* 34 F.3d 466, 468 (7th Cir.1994). Nonetheless, abuse of discretion review is not the same thing as a rubber stamp, and we have not hesitated to find such an abuse where the facts warranted. See *Bluestein,* 68 F.3d at 1025–26; *Penny v. Shansky,* 884 F.2d 329, 330 (7th Cir.1989) (*pro se* plaintiff); *Sisk v. United States,* 756 F.2d 497, 499–500 (7th Cir.1985) (same); *Heidelberg v. Hammer,* 577 F.2d 429 (7th Cir.1978) (same). Accord, *Hernandez v. Whiting,* 881 F.2d 768, 771 (9th Cir.1989); *Holt v. Pitts,* 619 F.2d 558, 562 (6th Cir.1980).

Here, we have the classic problem of the faithless agent (Dunphy's lawyer), but under circumstances in which the client had no voice in choosing the lawyer—indeed, where the judge himself first decided that Dunphy could not handle the case on his own, and then chose a lawyer for him who might as well have been a potted plant. There is language in *Link* that suggests that the district court would have been entitled to hold Dunphy responsible for his lawyer's failure to appear at the many scheduled conferences, if Cheronis had been retained rather than appointed:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

370 U.S. at 633–34, 82 S.Ct. at 1390 (internal quotations omitted). Here, of course, Dun-

phy did not "voluntarily" choose Cheronis to represent him, and Cheronis was not a "freely selected agent." The state defendants concede as much, noting in their brief that "*Link*'s agency theory has little weight where the plaintiff has not chosen his attorney." Brief of Appellees at 9. They argue nevertheless that district courts should enjoy the same discretion to dismiss this kind of case for want of prosecution, based on the attorney's actions, as they do in other cases where counsel is present. The hapless client with an appointed lawyer should be remitted to his legal malpractice action, just as his counterpart with a retained lawyer is.

If Dunphy had been proceeding *pro se*, the district court would have had to consider whether other possible avenues existed for addressing the case in light of Dunphy's inability to appear. See *Heidelberg,* 577 F.2d at 431; *Sisk,* 756 F.2d at 499. In this case, the record shows that Dunphy was, for all practical purposes, in the same situation as a *pro se* litigant. It was he who contacted the court each time seeking permission to reopen the case after the earlier dismissals, not Mr. Cheronis. It was Dunphy who gave the court detailed and timely information about exactly when he would be able to appear in person for a status conference, not Mr. Cheronis. Indeed, Mr. Cheronis had apparently abandoned his client during this entire period of time, which is of course a violation of the Rules of Professional Conduct for the United States District Court of the Northern District of Illinois (Rule 1.3 requires lawyers to act with "reasonable diligence and promptness in representing a client"), and of the State of Illinois (Article VII, Rule 1.3 of the Illinois Supreme Court Rules is identical to Rule 1.3 of the Northern District), not to mention a failure to live up to Cheronis' obligations to the court that appointed him to the case. See General Rules of the Northern District of Illinois 3.83–3.88 ("Northern District Rules") (detailing duties of appointed counsel and methods for terminating representation).

■■ Notwithstanding Dunphy's strong resemblance to a pro se plaintiff, however, the fact remains that he was technically represented. In most contexts, the courts do

not distinguish between retained and appointed counsel. Both are subject to the same duties under the Sixth Amendment to render adequate representation to criminal defendants, see *Cuyler v. Sullivan,* 446 U.S. 335, 344–45, 100 S.Ct. 1708, 1716–17, 64 L.Ed.2d 333 (1980), and the standards governing that representation are the same. *United States v. Weston,* 708 F.2d 302, 306 (7th Cir.1983). Strategic choices by either type of lawyer can, and usually do, bind criminal defendants with far greater consequence than the loss of a civil § 1983 claim. Once a lawyer accepts an appointment, we expect that lawyer to treat her client as she treats all clients. *Cf. Ferri v. Ackerman,* 444 U.S. 193, 200 n. 17, 100 S.Ct. 402, 407 n. 17, 62 L.Ed.2d 355 (1979), quoting Warren E. Burger, *Counsel for the Prosecution and Defense—Their Roles Under the Minimum Standards,* 8 Am.Crim. L.Q. 2, 6 (1969) (" '[D]efense counsel who is appointed by the court ... has exactly the same duties and burdens and responsibilities as the highly paid, paid-in-advance criminal defense lawyer.' ") (ellipses in original); Administrative Office of the United States Courts, *Model Criminal Justice Act Plan,* § VII, in VII Guide to Judiciary Policies and Procedures app. G ("The services to be rendered a person represented by appointed counsel shall be commensurate with those rendered if counsel were privately employed by the person.").

On the other hand, there are costs associated with encouraging disappointed clients who have received appointed counsel to sue their lawyers for legal malpractice. We have now held that federal public defenders and their assistants are "employees of the United States" entitled to the protections of the Westfall Act, so that malpractice actions against them must be converted into cases against the United States when the Attorney General certifies that they are government employees acting within the scope of their employment. See *Sullivan v. United States,* 21 F.3d 198 (7th Cir.1994). This protection does not apply to counsel appointed for civil rights actions, but there we face a different problem. The supply of lawyers (even competent lawyers) willing to take appointments, without compensation, would be bound to

constrict if the existing scope for malpractice actions from an often troublesome group of clients were expanded. This would harm both the clients and the court, which relies heavily on the goodwill of the bar to assist in cases with enough merit to warrant an appointment.

■■ In the end, we believe that we cannot improve on the general guidelines we offered in *Ball,* recognizing the fact that they were developed in a case that apparently involved retained counsel. There we emphasized the disfavored nature of the dismissal for want of prosecution as a sanction, and suggested a number of prophylactic measures. First, a judge should not dismiss a case on this ground without due warning to the plaintiff's counsel. Second, even though there is no "ironclad requirement" that the district court must notify the plaintiff himself, as distinct from his lawyer, we noted that the court has the "power to notify the plaintiff of the impending demise of his suit as a result of his lawyer's delicts and omissions." 2 F.3d at 756. Such a notice would give the plaintiff an opportunity to retain substitute counsel, or at the very least to make arrangements to handle the litigation on his own. Third, we indicated that the judge should weigh the extent to which the responsibility for the neglect of the case lay with the lawyer rather than with the client, and suggested penalizing the lawyer rather than the client (through, for example, sanctions, an award of costs to the opposing party, or the referral of the attorney for disciplinary measures) in appropriate situations. *Id.* at 758. We noted that the possibility of a legal malpractice action might not serve as an effective deterrent, because of the uncertainties in winning ultimate compensation and the expense of bringing two lawsuits. *Id.* at 757. Finally, we noted that the court should consider the efficacy of less severe sanctions, and confirmed the appropriateness of taking into account the likely merits of the plaintiff's suit. *Id.* at 758–59.

■ We think that this approach works just as well for cases involving appointed counsel as it does for retained counsel, even though in application some of the consider-

ations may be weighed differently. The court must bear in mind, when counsel has been appointed or recruited for a § 1983 action, that the usual assumptions about the agency relationship between the lawyer and client must be relaxed. Greater judicial oversight is an inevitable part of cases in which the court has decided to furnish a lawyer for a civil client because the judge has concluded that the case is too complex or difficult for the plaintiff to handle on her own. See generally *Farmer v. Haas,* 990 F.2d 319, 322 (7th Cir.1993). (For example, the judge must be available to review motions from the lawyer or either party regarding the propriety of that lawyer's appointment or discharge from that appointment. See Northern District Rules 3.84–3.85.) When the court considers a dismissal for want of prosecution, therefore, it should satisfy itself that appointed counsel is on the job. The need to advise the plaintiff directly may arise more frequently in these cases, just as this court notifies the client when a criminal defense lawyer decides to file a no-merit brief on appeal. See Circuit Rule 51(a). The court must also take a more careful look at the allocation of responsibility between the appointed lawyer and the client for the actions that have led to its consideration of a dismissal, and should consider appointing substitute counsel in cases where the fault seems to lie primarily with the lawyer.

■ In Dunphy's case, we do not know what the district court considered, because the order dismissing the case is one line long. It is therefore impossible for us to decide definitively whether, on all the facts, this dismissal was an abuse of discretion. The record before us indicates that Dunphy himself was doing everything in his power to advance the case, while Cheronis sat by and did virtually nothing. We do not know if the judge considered the efficacy of a less severe sanction, or if he tried to devise a measure that would have punished Cheronis rather than Dunphy, or if he considered notifying Dunphy before dismissing the case. We also do not know what the judge's view of the likely merits of the action was, although we know that at an early stage he thought the merits sufficiently promising that he appoint-

ed counsel for Dunphy. We do know, however, that the judge had in front of him a request from Dunphy to delay the April hearing until July, a reasonable request that seems to have warranted at least an explicit rejection, if not a delay.

Under the circumstances, we have no choice but to REVERSE and REMAND this appeal for further proceedings consistent with this opinion. We suggest that the district court consider appointing substitute counsel, if it determines that its dismissal was unwarranted.