*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0335p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

>    *Plaintiff-Appellant,*

>    *v.*                                       No. 05-4054

> SAMUEL F. COLLINGTON,

>    *Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 04-00587—Kathleen McDonald O'Malley, District Judge.

Argued: June 26, 2006

Decided and Filed: August 31, 2006

Before: MARTIN and GILMAN, Circuit Judges; SARGUS, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Robert J. Becker, ASSISTANT UNITED STATES ATTORNEY, Akron, Ohio, for Appellant. Douglas G. Smith, KIRKLAND & ELLIS, Chicago, Illinois, for Appellee. **ON BRIEF:** Robert J. Becker, ASSISTANT UNITED STATES ATTORNEY, Akron, Ohio, for Appellant. Douglas G. Smith, KIRKLAND & ELLIS, Chicago, Illinois, for Appellee.

MARTIN, J., delivered the opinion of the court, in which SARGUS, D. J., joined. GILMAN, J. (pp. 6-11), delivered a separate dissenting opinion.

---

**OPINION**

---

BOYCE F. MARTIN, JR., Circuit Judge. Samuel Collington pled guilty to possession with intent to distribute more than fifty grams of crack cocaine, 21 U.S.C. § 841(a)(1), felon in possession of a firearm, 18 U.S.C. § 922(g), and possession of a machine gun, 18 U.S.C. § 922(o). At sentencing, the district court calculated an advisory guideline range of 188 to 235 months of imprisonment, but determined that a variance was appropriate and sentenced Collington to 120 months, the statutory mandatory minimum for the charges he pled guilty to. The government now

---

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

1

appeals Collington's sentence for reasonableness. Based on the following discussion, we affirm the sentence imposed by the district court.

I.

On August 10, 2004, Collington was pulled over for speeding in Canton, Ohio. As a result of the traffic stop, Collington was arrested for driving without a valid driver's license. A search of Collington's person incident to his arrest revealed fifty-three grams of crack cocaine hidden in his waistband. Officers obtained a search warrant for Collington's residence and found 200 grams of crack cocaine, a pipe bomb, ammunition, and four firearms, including a loaded machine gun.

Collington pled guilty to possession of over fifty grams of crack cocaine with the intent to distribute, 21 U.S.C. § 841(a)(1), being a felon in possession of a firearm, 18 U.S.C. § 922(g), and unlawful possession of a machine gun, 18 U.S.C. § 922(o). The plea agreement anticipated that Collington's offense level would be thirty-three and his criminal history to be a III, yielding an advisory guidelines range of 168 to 210 months. Upon review of the presentence report, the district court decided that Collington's offense level was thirty-three and his criminal history was a IV, resulting in an advisory guidelines range of 188 to 235 months.

At Collington's sentencing hearing, the district court undertook what it described as a "three-step process." The first step was to calculate the appropriate advisory guideline range, which the district court did with no objection from either side to the resulting range of 188 to 235 months. The district court then proceeded to the second and third steps of its analysis: determining whether a variance from the guidelines range would be appropriate in this case and considering the section 3553(a) factors and the guidelines range to determine what sentence would be a "reasonable sentencing option[] for this Defendant."

To aid the court in its decision-making process, it heard from Collington's counsel and then questioned Collington regarding his personal history and the severity of the crimes in question. The court then decided to vary downward from the sentencing guidelines and impose a 120 month sentence with the full five-year period of supervised release. The court felt that a downward variance was justified given Collington's personal history, his criminal history, and his age. The government now appeals that sentence as being unreasonably low.

II.

We review sentences for reasonableness. *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). At the outset, it is worth noting that the district court in this case and the government in its brief to this Court confused the statutory mandate with the appellate standard of review. "[A] district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2). Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task." *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006) (emphasis in original).

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court invalidated the mandatory use of the Sentencing Guidelines and held they are now "effectively advisory." We have held that "[o]nce the appropriate advisory Guideline range is calculated, the district court throws this ingredient into the section 3553(a) mix." *United States v. McBride*, 434 F.3d 470, 476 (6th Cir. 2006). Section 3553(a) instructs a district court to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [section 3553(a)(2)]." 18 U.S.C. § 3553(a). The 3553(a)(2) factors which are to be considered when sentencing are the seriousness of the offense,

deterrence of future crimes, protection of the public from future crimes of the defendant, and providing the defendant with needed training or correctional treatment.[1]  18 U.S.C. § 3553(a)(2).

Because the Sentencing Guidelines are now advisory, a district court is permitted to vary from those guidelines in order to impose a sentence which fits the mandate of section 3553(a).  *See McBride*, 434 F.3d at 476.  Although we have held that a sentence within the guidelines is presumptively reasonable, *see United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006), this says nothing about sentences outside the advisory range.  As we said in *Foreman*, "*Williams* does not mean that a sentence outside of the Guidelines range – either higher or lower – is presumptively *un*reasonable.  It is not."  436 F.3d at 644.  Rather, our reasonableness review is in light of the 3553(a) factors which the district court felt justified such a variance.

We have now split our reasonableness review into two inquiries: procedural reasonableness and substantive reasonableness.  A sentence may be procedurally unreasonable if "the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration."  *Webb*, 403 F.3d at 383.  A sentence may be considered substantively unreasonable when the district court "select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent  § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor."  *Id.* at 385.  It is in this light that we review Collington's sentence, specifically the district court's downward variance from the advisory guidelines range.

The district court, in this case, varied downward from the guideline range of 188 to 235 months to give Collington a sentence of 120 months.[2]  The district court explained at the sentencing hearing that such a variance was justified in this case because of a number of factors which made Collington's case an outlier and which the guidelines did not account for.  The district court found that, despite Collington's criminal history being at a IV, Collington "has never been in custody for any substantial period of time," having only been imprisoned for seven months before this crime.  The district court also noted that the criminal history did not reflect that this incident was the first time that this quantity of drugs and guns had been found in Collington's possession.

As we have explained before, "[p]rior to Booker, sentences outside of the Guideline range were severely limited; now, 'with greater latitude' a 'district court need only consider [the Guideline range] along with its analysis of the section 3553(a) factors.'"  *United States v. Martin*, 438 F.3d 621, 641 (6th Cir. 2006) (Martin, J., concurring) (quoting *McBride*, 434 F.3d at 476).  Additionally,

> [i]n appropriate cases . . . a district court may conclude that the criminal history category overstates the severity of the defendant's criminal history or that a lower sentence would still comply with and serve the mandates of section 3553(a). That is, a district court may look beneath the specific criminal history score

and advisory guideline calculation to reach the appropriate sentence.  *Id.* at 642.

---

[1] The district court, in sentencing, should also consider the nature and circumstances of the offense, the characteristics of the defendant, the kinds of sentences available, the sentencing guidelines range, policy statements from the Sentencing Commission, the need to avoid sentencing disparities, and the need to provide restitution to the victims.  *See* 18 U.S.C. § 3552(a)(1), (3)-(7).

[2] The dissent notes that this variance is 36% below the low end of the guidelines range.  Dissent Opn. at 1, 6, 11.  Such analysis has no place in a review for reasonableness.  There is no mathematical percentage or formula that defines what reasonableness is.  Appellate review simply can not be reduced to such cold calculations.  It is those very calculations that *Booker* and its progeny attempted to remove from the federal sentencing process.

Finally, the district court noted Collington's family history, which included his father being murdered in their home when Collington was nine and losing his mother to cancer two years later. As a result, the district court ordered Collington to undergo mental health counseling. Also, the district court required that after Collington's imprisonment, he be under supervised release for five years, including aggressive drug testing during that time.

We find this sentence to be reasonable. The district court took the time to consider arguments from defense counsel, the government, and questioned Collington himself about the current charges, his history, and his desire to reform. The district court's explanation for this variance from the guideline range is a reasonable one. First, the district court felt that the Sentencing Guidelines did not accurately reflect Collington's actual criminal history. Additionally, the district court appeared to be persuaded by the fact that Collington had only previously served seven months in prison before these charges and was an ideal candidate for reform.

While the district court did not explicitly name each of the 3553(a) factors that it was using to arrive at Collington's sentence, a reasonable sentence based on consideration of the factors does not require a rote listing. *United States v. Vonner*, – F.3d –, No. 05-5295 (6th Cir. June 29, 2006) (citing *United States v. Williams*, 436 F.3d 706, 708-09 (6th Cir. 2006) in that this Court does not require "the ritual incantation of these factors to affirm a sentence."). In this case, the record shows a deep consideration of the seriousness of the offense which the district court referred to the crime as "heinous" and "particularly offensive." Next, the district court considered the history and characteristics of the defendant. In the court's sentencing opinion, it looked beyond the criminal history number and reviewed each of Collington's previous crimes and how those affected its decision. *See Martin*, 438 F.3d at 642 ("a district court may conclude that the criminal history category overstates the severity of the defendant's criminal history"). It then reviewed Collington's personal history, including the early deaths of his parents and the mistreatment from his other relatives who "apparently were more interested in the federal benefits he and his brother received than in the brothers' welfare." Dist. Ct.'s Opinion of Aug. 1, 2005 at 2-3. Finally, the district court considered the need for the sentence imposed by emphasizing its belief that a 120 month sentence is sufficient enough to reflect the crimes committed while allowing for the possibility that Collington may reform and after his release from prison, when he is in his mid-thirties, may go on to a productive life in society. *See Martin*, 438 F.3d at 642.

Given this detailed and in-depth analysis of Collington's sentence by the district court in the light of all relevant sentencing factors, this sentence appears to be procedurally and substantively reasonable. While a large variance requires a greater explanation, that standard was met here. The district court explained its analysis in reaching this sentencing determination and its analysis is sound. This Court must show some level of deference to the district court in sentencing, especially when that district court provides this Court with a factor-by-factor consideration of the relevant section 3553(a) factors. We have held that "we may conclude that a sentence is unreasonable when the district judge fails to 'consider' the applicable guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such consideration." *Webb*, 403 F.3d at 383. Neither of these situations is the case here as the district court considered both the guidelines range and the 3553(a) factors. Its final sentence was not random, but a reflection of its consideration of both.

The dissent, in arguing that Collington's sentence was unreasonable, quotes repeatedly from the district court's oral and written decision in order to show why Collington should not have received such a lenient sentence. *E.g.,* Dissent Opn. at pg. 6 (noting the district court's characterization of the offenses as "serious" and "particularly offensive"); Dissent Opn. at pg. 6 (stating that the district court's "normal inclination would be to sentence at the high to mid point

range," that the sentence was "a gift,"**3** and that the district court said "[p]art of me thinks putting you away for 20 years would make more sense"). While the dissent finds these selective quotations to weaken the reasonableness of district court's final sentence, we feel these statements in fact *bolster* the reasonableness of the sentence. It is the district court's very consideration of both the reasons for leniency and for a harsh penalty that makes its explanation a reasonable one and the sentence itself reasonable. The district court did not ignore these facts, but plainly had them in the front of its mind when it chose the sentence for Collington.

If the district court had *failed* to explicitly mention these factors, then that failure would strongly support a finding that the sentence was unreasonable. Therefore, the dissent's attempt to use the district court's explicit *mention* of these factors as cause to find the sentence unreasonable seems antithetical to our review for reasonableness. When the dissent asks for a district court to be "internally consistent" in its explanation, Dissent Opn. at 6, it appears to request a one-sided explanation from a district court: leniency or harshness, not both. However, the district court's consideration of both sides strengthens a sentence's reasonableness; it does not diminish it.

Additionally, the district court did not "select[] the sentence arbitrarily, bas[e] the sentence on impermissible factors, fail[] to consider pertinent § 3553(a) factors, or giv[e] an unreasonable amount of weight to any pertinent factor." *Id.* at 385  To argue that the district court in this case selected Collington's sentence arbitrarily is to wholly and unfairly dismiss the pages of analysis conducted by the district court including discussions with Collington and a factor-by-factor analysis in its sentencing opinion. The district court did not use an "impermissible factors" as it couched all of its reasons for Collington's sentence in the factors listed in section 3553(a). The district court, also, did not assign an unreasonable amount of weight to any of the factors which it considered. The district court did rely heavily on its belief that Collington is an ideal candidate for reform. However, that belief shows a consideration of not one factor, but arguably all of the factors, including the severity of the offense and the history and characteristics of the defendant. Therefore, we find Collington's sentence to be substantively reasonable.

When a district court considers the relevant 3553(a) factors in-depth and reaches its determination that the appropriate sentence varies outside the advisory guidelines range, we are very reluctant to find the sentence unreasonable. Doing so would essentially amount to substituting our judgment for the district court's as to how long the defendant should serve. We ought to give the district court the benefit of the doubt in these circumstances unless the variance is inadequately explained or substantively unreasonable. *United States v. Buchanan*, 449 F.3d 731, 739-740 (6th Cir. 2006) (Sutton, J., concurring).

III.

For these reasons, we affirm the district court's sentence as being reasonable.

---

**3**While the dissent criticizes the district court for giving Collington "a gift," this is no reason for this Court to find Collington's sentence unreasonable. What may be overlooked in appellate review is the fact that the district court does not issue its sentencing remarks in a vacuum or exclusively with this Court's review in mind. These comments are delivered directly to the defendant, often times with family members present. We should not begin persecuting the district courts for any niceties they may state in communicating its sentence to the defendant. Such a practice would only lead to depersonalizing an already difficult situation.

---

**DISSENT**

---

RONALD LEE GILMAN, Circuit Judge, dissenting. Today's decision marks the first time in a published opinion that this court has sustained as reasonable a district court's decision to vary downward from the applicable Sentencing Guidelines range. The majority takes this significant step in a case where the mandatory-minimum sentence imposed is 36% below the low end of the applicable Guidelines range, is less than what a first-time offender charged with these offenses would have received under the Guidelines, and effectively erases all punishment for the two serious gun charges to which the defendant pled guilty. Moreover, the district court based the variance sentence, which it acknowledged amounted to "a gift," on factors discouraged by the Sentencing Commission and on the speculative possibility that Samuel Collington's lack of significant jail time for his prior offenses made him amenable to rehabilitation. Applying the reasonableness inquiry articulated in *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005), I would vacate Collington's sentence and remand for resentencing. I therefore respectfully dissent.

## I. BACKGROUND

At first glance, the majority opinion does not set off any alarm bells. Those bells start to ring, however, when one considers the disconnect between the district court's statements at the sentencing hearing (and in its written sentencing opinion) and the court's ultimate sentencing determination. Because the majority provides only a truncated version of the sentencing proceedings below, and because a fuller understanding of those proceedings is essential to our reasonableness review, I will begin with a more complete account of the district court's analysis.

The district court, as the majority correctly notes, described its role in sentencing Collington as "a three-step process" in which the court would first determine the advisory Guidelines range, then "determine whether there is a departure that would be appropriate within the meaning of the guideline itself," and conclude by deciding whether, in light of the other factors set forth in 18 U.S.C. § 3553(a), "this sentencing range that results from the guidelines calculations presents the Court with reasonable sentencing options for this Defendant in these circumstances, and, if so, where within the sentencing range this Defendant should be placed." After Collington's counsel asked for a downward variance from the Guidelines range—despite a provision in the plea agreement that barred such a request—the district court rendered its sentencing decision.

The court began by highlighting the "serious" and "particularly offensive" nature of the charges to which Collington had pled guilty, noting that with an arsenal of firearms that included a machine gun, Collington was "just setting people up to get hurt." Continuing to address Collington, the court stated: "I guess I don't understand how you think you are going to end up differently than your father did when you live like this. Are you trying to get yourself killed?" Then, despite recognizing that its "normal inclination would be to sentence at the high or mid point range," the district court said that "maybe ten years"—the mandatory minimum sentence required by statute—"is enough." That sentence, according to the court, was warranted because Collington had previously "only been in custody for a period of several months and hasn't had an opportunity to reflect upon the lifestyle that he was undertaking." The court also emphasized that the crimes to which Collington had pled guilty were more serious than the previous crimes that he had committed, and that this conviction marked "the first time that these kind of quantities, at least that law enforcement is aware of, this quantity of drugs [had been] transferred by this Defendant."

Significantly, the district court recognized that the sentence that it was imposing was "a gift." Speaking candidly, the court acknowledged that it was sentencing the defendant "with some

hesitation," and that "[p]art of me thinks putting you away for 20 years would make more sense." The court nevertheless materially varied below the calculated Guidelines range and imposed the statutory mandatory minimum term of 120 months in prison, describing the sentence as "substantial" and "reasonable . . . for this Defendant in these circumstances."

After the government noted its objection, the district court issued a written Opinion and Order further explaining its sentencing decision. Like the oral ruling, the written opinion characterized the nature of the offense as "heinous," called the defendant "currently a danger to society," and noted "grave concern" over the defendant's history of selling crack. The court nevertheless described the case as "unique" because (1) Collington's relatively high criminal history score was based on "misdemeanor possession charges brought against him at a very young age," a felony conviction for dog fighting, and the fact that three of the charged offenses occurred while he was on parole for the dog-fighting conviction; (2) Collington's only violent offense arose out of a fight in prison; and (3) Collington's one term of imprisonment was a relatively short seven months. This latter point was especially important to the district court, which reasoned that a sentence of ten years would adequately "allow for serious rehabilitative efforts" and "provide the defendant with at least the possibility of a future once counseling and education have been received." The court concluded: "As his first real custody term, ten (10) years seems sufficient."

## II. REASONABLENESS OF THE SENTENCE

In *United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006), this court explained that sentences outside the Guidelines range, although not entitled to a presumption of reasonableness, are not "presumptively *un*reasonable" either. (Emphasis in original.) But a sentence becomes unreasonable when a district court "select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors, or giv[es] an unreasonable amount of weight to any pertinent factor." *Webb*, 403 F.3d at 385. I believe that the district court in the present case imposed an unreasonable sentence by relying on considerations discouraged by the Sentencing Commission, by declining to consider the Commission's policy statements (which are a factor enumerated in § 3553(a)), and, above all, by giving "an unreasonable amount of weight" to the speculative possibility that Collington might be especially amenable to rehabilitative efforts. *See id.*

The district court decided to impose a sentence that it acknowledged was "a gift" notwithstanding the seriousness of the offenses charged and Collington's checkered criminal past. I do not want to make too much of this one statement, but it is striking. The district court's task is decidedly not to give out "gifts;" rather, the court must consider all of the factors in § 3553(a) and impose "a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." *Foreman*, 436 F.3d at 644 n.1 (quotation marks omitted); *see also United States v. Ferguson*, - - F.3d - -, 2006 WL 2265468, at *7 (6th Cir. Aug. 9, 2006) (noting that "this court has highlighted" the parsimony provision of § 3553(a) "as the guidepost for sentencing decisions post-*Booker*"). In my view, the record fully supports the government's contention that "Collington is about the last person entitled to a substantial downward deviation," and that the mandatory minimum sentence chosen by the district court significantly understates the seriousness of his crimes and his criminal history. The district court itself appeared at times to agree, commenting that it would normally choose a sentence "at the high or mid point range" of the Guidelines, and that it imposed the sentence "with some hesitation."

What led the district court to a different conclusion—and what I believe constitutes its principal error—was the undue weight that it gave to the fact that Collington's one and only prison term of seven months was relatively short, and its willingness to speculate on the possibility that he would therefore be rehabilitated more quickly. *See Webb*, 403 F.3d at 385 (noting that a sentence may be unreasonable where the district court "giv[es] an unreasonable amount of weight to any

pertinent factor"); *see also United States v. Cage*, 451 F.3d 585, 595 (10th Cir. 2006) (reversing a dramatic downward variance and explaining that "[t]he problem with the sentencing decision . . . is not in the consideration of [the § 3553(a) factors]; it is in the weight that the district court placed on them").

The district court in the present case repeatedly emphasized that it was choosing a lower sentence "because the Defendant has never been in custody for any substantial period of time," and had "never had the benefit of true rehabilitative efforts[.]" Although providing "the defendant with needed educational or vocational training . . . or other correctional treatment in the most effective manner" is undoubtedly a proper factor for the sentencing court to consider, *see* 18 U.S.C. § 3553(a)(2)(D), this factor in the present case provides the sole basis for Collington's variance sentence, which is 36% below the minimum of the recommended Guidelines range.

The majority acknowledges that large variances of this ilk "require[] a greater explanation." Maj. Op. at 4. I agree whole-heartedly that this is a correct statement of the law, one that finds support in the decisions of this court and virtually every other circuit. *See United States v. Davis*, - - F.3d - - , 2006 WL 2335240 (6th Cir. Aug. 14, 2006) (joining "every other court of appeals to consider the question" in holding that "the farther that a judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) must be") (citation and quotation marks omitted).

But I part ways with the majority in applying this legal principle to the facts of the present case. "A greater explanation," in my view, is not simply a *longer* explanation or one that is "not random." Maj. Op. at 4. Instead, it is an explanation that is both internally consistent and that reflects due consideration of the delicate balance that the various factors enumerated in § 3553(a) aim to strike. I do not quarrel with the majority's contention that the district court provided an extensive explanation of its sentencing decision, in both oral and written form. Nevertheless, I cannot overlook the irreconcilable tension between the district court's emphasis on the "heinous" nature of Collington's offenses—and in particular the danger that those crimes posed to society—and its ultimate decision to give him the most lenient sentence possible.

I find this court's recent decision in *United States v. Davis*, - - F.3d - - , 2006 WL 2335240 (6th Cir. Aug. 14, 2006), to be particularly instructive. After the defendant in *Davis* was convicted by a jury on two counts of bank fraud, the district court calculated an advisory Guidelines range of 30 to 37 months. *Id.* at *1. Relying principally on the defendant's advanced age—he was 70 at the time of sentencing—and on the fact that the crimes had taken place 14 years earlier, the district court sentenced Davis to a total of one day in prison, three years of supervised release, and one hundred hours of community service. *Id.* at *3. This court recognized that the sentencing proceedings satisfied all of the procedural requirements set forth by its post-*Booker* caselaw, but nonetheless concluded that the sentence imposed was substantively unreasonable. The *Davis* court explained that neither of the factors emphasized by the district court served to justify the "extraordinary variance," and that the "extreme" nature of the sentence left "no room to make reasoned distinctions between Davis's variance and the variances that other, more worthy defendants may deserve." *Id.* at *5, *7.

Although the downward variance in the present case is not as dramatic in percentage terms as that in *Davis*, I believe that the same conclusion follows. In *Davis*, the district court sentenced the defendant to what was effectively the minimum amount of jail time that could be served. The district court in the present case did the same thing, sentencing Collington to the mandatory minimum required by statute. And while the numbers are certainly different—one day versus ten years—the principle is identical. Specifically, just as the sentence in *Davis* left "no room to make reasoned distinctions between Davis's variance and the variances that other, more worthy defendants may deserve," *id.* at *7, the sentence here does little to distinguish between defendants subject to

a high Guidelines range solely because of the large quantity of drugs they possessed and others, like Collington, who have engaged in additional types of dangerous conduct. If a repeat drug offender who also possesses an arsenal of dangerous weapons is entitled to the statutory minimum, one wonders how the district court could justify sentencing other drug offenders who forego such weaponry to anything beyond the same mandatory minimum.

Indeed, the fact that the sentence chosen effectively erases the serious gun charges to which Collington pled guilty is among the most troubling aspects of the district court's sentence. The sentence prescribes a term of imprisonment 31 months below what the Guidelines minimum would have been had Collington pled guilty *only* to the drug charges. This result undermines the statutory goal of imposing a sentence that "reflect[s] the seriousness of the offense[.]" 18 U.S.C. § 3553(a)(2)(A). Nullifying the effect of the gun charges also flies in the face of the district court's earlier statements expressing outrage at the types of weapons found at Collington's residence—"I mean, look at these firearms you had. A machine gun? I mean, you were just setting people up to get hurt." In short, the substantial downward variance based almost exclusively on the defendant's speculative potential for rehabilitation was unreasonable because it attached no consequences to Collington's possession of a loaded sawed-off pump-action shotgun, a loaded fully automatic assault rifle, a pipe bomb, two more semi-automatic handguns, and many rounds of ammunition.

To the extent that the district court's decision to opt for leniency also stemmed from concerns over Collington's criminal history score, a comparison with traditional Guidelines-based departures suggests that, at a minimum, the magnitude of the downward variance was unreasonable. This court has taken the position that Guidelines-based departures remain viable after *Booker* and that "Guideline departures are still a relevant consideration for determining the appropriate Guideline sentence." *United States v. McBride*, 434 F.3d 470, 477 (6th Cir. 2006); *see also United States v. Matheny*, 450 F.3d 633, 641 (6th Cir. 2006) (upholding as reasonable a sentence that included a 6-month upward departure under the Guidelines). Although the district court sentenced Collington before *McBride* was decided, it presciently indicated that it would consider the availability of departures under the Guidelines before deciding whether to impose a variance sentence. The court did not, however, follow through with its plan.

Section 4A1.3 of the Guidelines permits a district court to depart downward where "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." The district court could have assuaged its concern that Collington's "criminal history is not typical of that normally seen when defendants score that high on the criminal history scale," by moving down to the criminal history category that it believed appropriate. Had it followed this path, however, the lowest sentence within the Guidelines range—assuming a criminal history category of I—would still have been 15 months *above* the 120-month sentence actually imposed.

The downward variance thus left Collington with a sentence more lenient than the one that he would have received if he were a first-time offender, and also contravened the former prohibition against departing below the Guidelines range for Criminal History Category I. *See* U.S. Sentencing Guidelines Manual § 4A1.3(b)(2) ("A departure below the lower limit of the applicable guideline range for Criminal History Category I is prohibited."); *id.* § 4A1.3 n.3 (explaining that such departures are barred because "the lower limit of the guideline range for Criminal History Category I is set for a first offender with the lowest risk of recidivism"). Even if a sentence below the Guidelines range was appropriate, the district court's downward variance was unreasonable in its magnitude under these circumstances because it led to a sentence below that which would have been imposed on first-time offenders under the Guidelines.

In reaching this conclusion, I am not reading *McBride* as obligating the district courts in all cases to consider Guidelines-based departures before choosing a variance sentence. Other circuits

have so held, but this court has not. *See United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006) (holding that, before it "elect[s] to impose a non-guideline sentence," a district court "should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law"). But where the considerations animating a variance sentence are the same ones that would justify a Guidelines-based departure, and the district court varies beyond even the maximum possible departure under the Guidelines, it should be required to explain what prompted a variance of that degree. In the present case, therefore, the problem is not that the district court failed to consider the availability of a Guidelines-based departure, but instead that the court dropped to the 10-year statutory minimum without adequately explaining why such a substantial variance was warranted. *Cf. Webb*, 403 F.3d at 383 (noting that a sentence may be unreasonable where the court "simply selects what the judge deems an appropriate sentence").

The district court's final error was its failure to consider all of the pertinent factors listed in § 3553(a). *See id.* at 385 (explaining that a failure "to consider pertinent § 3553(a) factors" may constitute unreasonableness). Indeed, the court stated in its written opinion that it believed "[o]nly the first three sentencing factors listed under 18 U.S.C. § 3553(a) and the Sentencing Guidelines are relevant." Included in the remaining statutory factors that the district court overlooked are "pertinent policy statement[s]" issued by the Commission. *See* 18 U.S.C. § 3553(a)(5); *see also United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006) (noting that 18 U.S.C § 3553(a)(5) "requires the district court to consider any relevant policy statements in determining the sentence to be imposed"); *United States v. Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006) ("[I]n discharging our duty to review sentences for reasonableness, we are required to consider any pertinent policy statements issued by the Sentencing Commission or the Congress . . . .").

Policy statements applicable to the present case include two that discourage basing a departure on the age or troubled upbringing of a defendant. *See* U.S. Sentencing Guidelines Manual § 5H1.1 ("Age (including youth) is not ordinarily relevant in determining whether a departure is warranted."); *id.* § 5H1.12 ("Lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds in determining whether a departure is warranted."). Despite these policy statements, the district court appears to have placed great weight on the "very young age" at which Collington committed his other crimes, his "difficult childhood," the death of his parents, and the fact that he "was bounced among relatives, some of whom apparently were more interested in the federal benefits he and his brother received than in the brothers' welfare."

This is not to say that district courts are absolutely barred from basing a variance sentence on factors that the Guidelines either discouraged or prohibited as bases for departures. The decision in *United States v. Jackson*, 408 F.3d 301, 305 n.3 (6th Cir. 2005), left that issue open, allowing the district court on remand the option of "address[ing] these provisions and decid[ing] what weight, if any, to afford them in light of *Booker*." This court's decision in *Davis*, issued after we heard oral argument, likewise acknowledged that, "[i]n an appropriate case," a district judge may have "a freer hand to account" for a factor disapproved of by the Commission's policy statements. *See* -- F.3d --, 2006 WL 2335240, at *6. *But see Rattoballi*, 452 F.3d at 134 ("A non-Guidelines sentence that a district court imposes in reliance on factors incompatible with the Commission's policy statements may be deemed substantively unreasonable in the absence of persuasive explanation as to why the sentence actually comports with the § 3553(a) factors."). The *Davis* court nonetheless held that the reference to the defendant's old age did not suffice to justify a dramatic downward variance. - - F.3d - -, 2006 WL 2335240, at *7. Assuming that the district court in the present case would continue to consider Collington's age and upbringing relevant in crafting a sentence, we should at a minimum order a remand so that the district court can explain what weight it accords those factors and why those factors suffice to justify a variance sentence of this magnitude.

Finally, I am not persuaded by the majority's comment that appellate courts "are very reluctant to find [sentences] unreasonable" because "[d]oing so would essentially amount to substituting our judgment for the district court's as to how long . . . defendant[s] should serve." Maj. Op. at 5; *see also United States v. Crisp*, - - F.3d - - , 2006 WL 1867754, at \*4 (11th Cir. July 7, 2006) (acknowledging that reasonableness review is deferential, but opining that "[t]here is . . . a difference between deference and abdication"). But every time that an appellate court overturns a discretionary ruling by a district court, it is in effect "substituting [its] judgment" for that of the district judge. Our system of appellate review not only tolerates this practice, but requires it, refusing to convert appellate courts into nothing more than rubber stamps. *Cf. Dunphy v. McKee*, 134 F.3d 1297, 1300 (7th Cir. 1998) (noting that even "abuse of discretion review is not the same thing as a rubber stamp"). Where, as here, nothing else in the record supports either an upward or a downward deviation from what the district court acknowledged would normally be the appropriate sentencing range, I believe that giving excessive weight to Collington's uncertain potential to benefit from rehabilitative efforts amounts to precisely the type of unreasonableness contemplated by this court in *Webb*. *See* 403 F.3d at 385.

In sum, I believe that the sentence in the present case should be reversed despite the generally deferential nature of reasonableness review. *Cf. United States v. Gall*, 446 F.3d 884, 889 (8th Cir. 2006) (describing reasonableness review as "a standard akin to our traditional review for abuse of discretion") (citation and quotation marks omitted). Even though district courts should certainly be given "the benefit of the doubt in . . . their sentencing determinations," *United States v. Buchanan*, 449 F.3d 731, 741 (6th Cir. 2006) (Sutton, J., concurring), I do not believe that they should be given *carte blanche* authority to ignore the judgment of Congress, the Sentencing Commission, and, as in the present case, their own intuitive inclination. They should, at the very least, be discouraged from employing their new discretion to award "a gift" to a defendant whose primary redeeming attribute is the speculative possibility that he might be amenable to rehabilitation.

## III.  CONCLUSION

For all of the reasons set forth above, I would hold that Collington's sentence is unreasonable. I therefore respectfully dissent from the majority's contrary disposition.