NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  08a0338n.06
Filed:  June 16, 2008

No. 07-1593

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **ON APPEAL** FROM THE |
| **Plaintiff-Appellee,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| DANIEL ORTEGA-ROGEL, | ) | **O P I N I O N** |
| | ) | |
| **Defendant-Appellant.** | ) | |

BEFORE:  MARTIN and NORRIS, Circuit Judges; STAMP, District Judge.[*]

**ALAN E. NORRIS, Circuit Judge.**  Defendant Daniel Orgeta-Rogel appeals from the sentence imposed by the district court after he pleaded guilty to a one-count indictment that charged him with the possession of false identification documents in violation of 18 U.S.C. § 1028(a)(3). On appeal, defendant raises two issues: 1) the district court acted unreasonably when it imposed a sentence above the advisory guidelines range; 2) the district court erred when it imposed a six-level increase based upon the number of documents rather than the three-level increase supported by the indictment. For the reasons that follow, we vacate the judgment and remand the matter for resentencing.

**I.**

---

[*]The Honorable Frederick P. Stamp, Jr., United States District Judge for the Northern District of West Virginia, sitting by designation.

Defendant is a Mexican national who entered the United States illegally in 2000. While in this country, he worked as a migrant agricultural laborer, first in California and eventually in Michigan. Since his arrival in this country, he has fathered two children by an American citizen, Melinda Gomez.

In December 2006, the Michigan State Police received an anonymous tip that someone was selling social security numbers from a Bronson, Michigan address. An investigation revealed that vehicles registered to Ms. Gomez and defendant were associated with the address. The police paid a visit, encountered Ms. Gomez, and eventually received written consent to search the residence. Defendant was in the bedroom. According to the pre-sentence report ("PSR"), the search uncovered "several Social Security cards, resident alien cards, Social Security numbers written on paper with names and dates of birth, and several operators licenses from multiple states." Defendant waived his *Miranda* rights and conceded that he participated in a scheme to sell false documents with an individual named Eduardo Hernandez, who lived in California. An extensive list of the items seized from the residence at the time of the search is included in the PSR.

As already mentioned, defendant pleaded guilty to a one-count indictment charging him with knowing possession of "seven fraudulently made alien registration cards and eight fraudulently made Social Security cards" with intent to unlawfully transfer them. In calculating the advisory guidelines range, the PSR began with a base offense level of 11, which the parties do not contest. It went on to recommend a three-level downward adjustment for acceptance of responsibility offset by a six-level increase for possession of between 25 and 99 documents. When coupled with a criminal history category of I, the advisory guidelines range called for between fifteen to twenty-one months

of imprisonment. United States Sentencing Commission, <u>Guidelines Manual</u>, ch. 5, pt. A sentencing table (Nov. 2006).

Defendant objected to the six-level increase based upon the number of documents involved in the crime; the government, while not objecting, noted that it could not bear the burden of proof with respect to the fraudulent nature of the documents except as to those actually charged in the indictment.

At the sentencing hearing, the government reiterated that, "We cannot speak to whether the remaining documents are false." The district court made the following observations respecting the number of documents at issue for sentencing purposes:

> I think to turn a blind eye to 62 miscellaneous paper documents, copies of Mexican identifications, paychecks, letters, 13 miscellaneous paper documents containing personal information such as copies, seven Permanent Resident Alien cards, two Michigan vehicle registrations, it's obvious that [paragraph]15 [of the PSR] relates to 14 where Mr. Ortega-Rogel stated that he had sold false identification for Eduardo . . . who's in the business too recently, received $200. He informed the troopers he intended to use the personal information from one of the Social Security cards of the two females, name, date of birth and Social Security number, to start his own business.
>
> . . . .
>
> So I think that a fair reading of the presentence report, the unobjected portion, indicates that clearly more than 25 documents were related to this business, and I'll call it a business, of intending to transfer false U.S. identification documents . . . .
>
> Are there 31 that are all in – or 41 that are all in one pile that have written on them U.S. documents for purposes of my selling? No. But this Court looks at the overall take on Ms. Gomez's comments . . . , this defendant's comments about Eduardo Hernandez and other such things. It seems to me pretty clear what was going on.

Had the district court applied only the documents charged in the indictment, the adjusted offense

level would have been eleven rather than fourteen, and the suggested guidelines range would have

been eight to fourteen months rather than fifteen to twenty-one months.

The district court concluded that even the higher guidelines range was inadequate to reflect

the severity of the crime and imposed a sentence of twenty-four months of incarceration:

> The nature and circumstances of this offense are somewhat egregious.
> They're very egregious in that the presence of these forged and counterfeit and
> unlawful documents that appear to have proliferated throughout the United States in
> the last several years . . . . [T]he circumstances of this offense enable one to
> fraudulently take a document which the United States issues as part of its national
> security and make a mockery of that law . . . .
>
> It's one thing to come to America wanting to earn a living because of dire
> poverty and basically an empty stomach . . . . It's another thing to pay a smuggler
> $1,000 or $2,000 to bring one to the United States where one can gather illegal
> documents, copiers, other such paraphernalia, and earn money selling these
> fraudulent documents to impoverished illegal aliens who part with $100 or $200 or
> maybe $300 to buy this worthless piece of paper and try and pass it off as a document
> that's lawful. That is probably the most disrespectful thing a person can do for the
> laws of the United States, and in fact it undermines the integrity of our country.

The district court went on to find that the likelihood of repeat offenses is "reasonably high in this

case."

## II.

### 1. *Was the Sentence Imposed by the District Court Reasonable?*

In the wake of *United States v. Booker*, 543 U.S. 220 (2005), this court reviews sentences

imposed by the district court for reasonableness. *United States v. Collington*, 461 F.3d 805, 807 (6th

Cir. 2006) (citing *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005)). For its part, the district

court is charged with imposing a sentence that is sufficient to comply with the factors outlined in 18

U.S.C. § 3553(a)(2). *Id.* While the Supreme Court has held that an appellate court may apply a presumption of reasonableness to a sentence that reflects a proper application of the sentencing guidelines, that presumption is not binding. *Rita v. United States*, 127 S. Ct. 2456, 2462-63 (2007).

In this case, the district court elected to impose a sentence above that recommended by the guidelines. In *Rita*, the Court noted that "[t]he fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness" when the sentence falls outside the range suggested by the advisory guidelines. *Rita*, 127 S. Ct. at 2467. Rather, "reasonableness review is in light of the 3553(a) factors which the district court felt justified such a variance [from the advisory guidelines range]." *Collington*, 461 F.3d at 808. This review requires that we consider whether the sentence imposed was both procedurally and substantively reasonable:

> A sentence may be procedurally unreasonable if "the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *Webb*, 403 F.3d at 383. A sentence may be considered substantively unreasonable when the district court "select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor." *Id.* at 385.

*Id.*

Defendant contends that the above-guidelines sentence was both procedurally and substantively unreasonable because the district court failed to explain why the guidelines range was insufficient to satisfy the factors contained in 18 U.S.C. § 3553(a). We agree. The factors listed in § 3553(a) favor a sentence at the low end of the guidelines range, not above it. First, the "nature and

circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), favor defendant. The evidence in the record supports a conclusion that he had only recently become involved with illegal documents, that he had a minimal prior criminal history, and that he came from poverty. While none of these considerations would require a sentence below the guidelines range, neither do they support a sentence above the range. With respect to "the seriousness of the offense" and "deterrence," 18 U.S.C. § 3553(a)(2)(A)&(B), the district court noted that trafficking in illegal identification documents undermines the integrity of the system and, to a certain extent, our national security. It did not explain why this particular crime is "egregious," however, nor is it clear why defendant's crime "is probably the most disrespectful thing a person can do for the laws of the United States, and in fact it undermines the integrity of our country." If Congress or the sentencing commission felt that the crime was sufficiently "disrespectful," those bodies would presumably have prescribed harsher sanctions. Finally, with respect to protecting the public from future crimes, 18 U.S.C. § 3553(a)(2)(C), the fact that defendant will be deported does that to some extent.  Although defendant has already entered the country illegally once, the evidence in the record indicates that he did so at great cost to himself (he paid a "coyote" $2,000 to assist him) and it is therefore far from a foregone conclusion that he would have the means or desire to do so a second time.  At the very least, that consideration would apply with equal force to all defendants to be deported at the conclusion of their sentences.

In short, we find little to indicate that defendant's case is sufficiently atypical to merit an upward departure from the prescribed guidelines range.

*2. Number of Documents Considered for Sentencing*

Defendant acknowledges that this circuit continues to apply a preponderance of the evidence standard when it comes to "judicial fact-finding for sentencing purposes." *United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006). However, when a defendant challenges the applicability of an enhancement, the government must establish the enhancement factors by a preponderance of the evidence. *Unites States v. Ables*, 167 F.3d 1021, 1035 (6th Cir. 1999). In this instance, the government explicitly declined the invitation to offer evidence in support the district court's finding that more than twenty-five documents were at issue for sentencing purposes. It is insufficient for a district court simply to adopt the recommendation of a PSR without making independent factual findings with respect to those portions of the report to which a defendant has objected. *United States v. Parrott*, 148 F.3d 629, 634-35 (6th Cir. 1998). While the district court arguably attempted to make its own findings based upon its reading of the PSR, the government's tepid support of the district court's conclusion respecting the number of documents at issue, coupled with the fact that this matter must be remanded for resentencing in any event, leads us to err on the side of caution by vacating this finding in order to allow the parties to marshal evidence in support of their respective positions. This course will permit the district court to make more detailed, independent findings should it choose to consider documents beyond those admitted in the indictment when calculating defendant's sentence.

### III.

The judgment is **vacated** and the case **remanded** for **resentencing**.