*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0041p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee*,

    *v.*

WILLIAM DALLAS ELMORE,
                *Defendant-Appellant.*

No. 12-6418

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:11-cr-00054-1—Joseph H. McKinley, Jr., Chief District Judge.

Decided and Filed: February 28, 2014

Before: DAUGHTREY, GIBBONS, and DONALD, Circuit Judges.

_____

## COUNSEL

_____

**ON BRIEF:** Dennis G. Terez, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Candace G. Hill, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee.

_____

## OPINION

_____

MARTHA CRAIG DAUGHTREY, Circuit Judge. Defendant William Dallas Elmore pleaded guilty to two counts of possession of child pornography and received a below-guidelines sentence of 51 months in prison, followed by ten years of supervised release. On appeal, Elmore claims that this sentence is substantively unreasonable because the district judge (1) unfairly treated Elmore's abusive childhood as an aggravating, rather than mitigating, factor in sentencing; (2) placed unreasonable weight on the need to punish and deter Elmore; and (3) skewed the sentence upward by comparing Elmore's sentence to a harsher regional subset of cases, rather than looking

1

to sentencing practices nationally, and relying on his "gut feeling," rather than informed reason, in doing so. For the reasons discussed below, we conclude that the district court properly weighed the various competing sentencing objectives and, in arriving at the 51-month result, accorded due weight to factors calling for leniency in Elmore's case. It follows that the district court did not abuse its discretion or arrive at a substantively unreasonable sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arose when a University of Louisville employee discovered a Memorex flash drive that had been left in a computer lab at the university. Seeking to reunite the drive with its owner, the employee accessed its contents and discovered digital images of what she believed to be child pornography. She then contacted the university police and released the flash drive to the responding officer.

The university police also examined the flash drive in an effort to identify the owner. They found several class writing assignments indicating that the drive belonged to a student named William Dallas Elmore. They also found 20-30 digital images of young female children engaged in explicit sexual activity. Further investigation into university records cemented the flash drive's connection to Elmore; his classes corresponded to the writing assignments on the flash drive, and one of these classes had recently met in the computer lab where the drive was found.

On the basis of this evidence, law enforcement officers obtained four federal search warrants covering Elmore's residence, his person, his vehicle, and the flash drive previously discovered by the university employee. When officers executed the warrants, they found Elmore at home with his live-in girlfriend and their young daughter. After being advised of his constitutional rights and informed that he was not under arrest, Elmore completed a waiver-of-rights form and admitted possessing the flash drive and downloading the pornographic images found on it using his personal computer. He denied any knowledge or participation on the part of his girlfriend. The police removed several computers and digital storage devices from the apartment but did not arrest Elmore.

A later forensic examination of digital materials removed from Elmore's residence revealed a total of 155 digital child-pornography images. Following his indictment, Elmore entered a plea agreement with the government in which he admitted all of the facts described above. In exchange for Elmore's guilty plea, the government agreed to recommend a sentence at the lowest end of the applicable guidelines range, based on an offense level of 26, which was calculated as a base offense level of 18 and increased by the usual enhancements for use of a computer, number of images, sadomasochistic content, and age of the victims, but then reduced as a result of Elmore's acceptance of responsibility under U.S.S.G. § 2G2.2(a)-(b). The presentence report recommended a Category II criminal history on the basis of Elmore's 2008 conviction for fourth-degree domestic violence, a misdemeanor. The conviction resulted from an incident in which he held his girlfriend's arm to prevent her from leaving during an argument. She obtained an emergency order of protection against Elmore following the incident, but they had resumed living together at the time the search warrants were executed.

In advance of sentencing, Elmore underwent evaluations by two different expert psychologists, Dr. Christine Scronce for the prosecution and Dr. John McGregor for the defense. Both expert reports described Elmore as a victim of sexual and physical abuse as a child. Elmore, as well as both the experts who examined him, traced his unwanted sexual interest in young children to this history of childhood abuse. These clinical evaluations further indicated that he suffered from borderline personality disorder and adjustment disorder with depressed mood.

Despite his troubled childhood, Elmore graduated from high school with good grades and, in 2005, joined the United States Navy. Although performing well in some regards, Elmore's obsessive tendencies and substance abuse problems resulted in a series of disciplinary infractions that eventually led to discharge under honorable conditions in 2007, due to failure to complete an alcohol rehabilitation program following an apparent suicide attempt. His unwanted sexual feelings towards children continued after discharge, eventually leading him to seek treatment during a 2007 visit to a Veterans

Administration medical center. Although he met with a VA counselor and attended some classes, he eventually dropped out of the program because he felt the program "wasn't doing any work for [him]." The record indicates that after the search of his residence, he again sought therapy for unwanted sexual attraction to children, but again he failed to follow through and complete a program or remain in treatment.

Having pleaded guilty, Elmore waived contention of all issues except the length of his sentence. Pursuant to the terms of the plea agreement, the government recommended imposition of the lowest guidelines-range sentence for a level-26 offense, or 63 months, followed by lifetime supervision. Elmore did not request a specific sentence but argued that federal sentencing objectives listed in 18 U.S.C. § 3553(a) could be satisfied with minimal, if any, prison time. He also presented expert testimony from Dr. McGregor, portraying Elmore as a good candidate for treatment who was unlikely to re-offend generally, and particularly unlikely to engage in a contact-offense with a child. The government presented testimony from the mother of Elmore's then-ex-girlfriend, who described his erratic mannerisms at family dinners, an angry outburst regarding the protective order, and a menacing telephone call she received from him after his arrest.

The district judge admitted feeling "conflicted by all this." At several points during the sentencing hearing, he recognized that Elmore's childhood "victimization made him who he is," and expressed misgivings about "punishing him more severely because [of] his victimization." The district judge also noted Elmore's comparatively minimal criminal record, his efforts to obtain treatment, and the fact that Elmore's pornography collection was "one of the smallest" he had seen. The district judge confessed his frustration with the federal sentencing guidelines, saying that he thought they "have sort of skewed upward these kind[s] of cases," even for less culpable offenders. Ultimately, the district judge imposed a sentence of 51 months, followed by ten years of supervised release.

In some respects, the 51-month sentence reflects the leniency factors mentioned above – the judge reclassified Elmore's criminal history from Category II to Category

I (to reflect what he saw as the relative insignificance of the domestic violence conviction) and removed the two-level enhancement for use of a computer (to avoid "double counting," although he agreed that there "was a legal basis on that [enhancement]"). The judge also recommended sex-offender treatment, although "[w]hether you get into it or not will be another matter." But the judge noted that Elmore's history of childhood victimization had left him "a terribly messed-up person" with poor impulse and anger control, and he hypothesized that it could make Elmore a comparatively greater risk to the public, while at the same time acknowledging the apparent unfairness of imposing a harsher sentence on the basis of problems resulting from Elmore's childhood. Ultimately the judge was forced to conclude that the punishment, deterrence, and public-protection objectives of § 3553(a)(2)(A)-(C) demanded due consideration. The district judge also stressed the need to "treat[] people the same," which he sought to accomplish in part by "keep[ing] a list of all the child pornography defendants . . . [and] figur[ing] out where they are in relation to my gut level of what a reasonable sentence ought to be." It is unclear whether the judge's informal list of child pornography defendants was drawn from his own docket exclusively, or from other cases within the district or circuit.

## DISCUSSION

On appeal, Elmore's sole claim of error concerns the reasonableness of his 51-month sentence. We review sentencing decisions for both procedural and substantive reasonableness under a deferential abuse-of-discretion standard. *Gall v. United States,* 552 U.S. 38, 51 (2007); *United States v. Benson*, 591 F.3d 491, 500 (6th Cir. 2010). Elmore challenges his sentence only for substantive unreasonableness. As a result, a remand for resentencing is required if "the district court select[ed] a sentence arbitrarily, base[d] the sentence on impermissible factors, fail[ed] to consider relevant sentencing factors, or g[a]ve[ ] an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)). Although "a sentence within the Guidelines range is presumed reasonable, a sentence outside the Guidelines range is not presumed unreasonable." *United States v. Christman*, 607 F.3d 1110, 1118 (6th Cir.

2010) (citing *United States v. Houston,* 529 F.3d 743, 755 (6th Cir. 2008)). "Regardless of whether the sentence imposed is inside or outside the Guidelines range," an appellate court reviews for reasonableness under the same abuse-of-discretion standard. *Gall*, 552 U.S. at 51.

Elmore stands convicted under 18 U.S.C. § 2252A(a)(5)(B), possession of child pornography, an offense that does not have a mandatory minimum. *See* 18 U.S.C. § 2252A(b)(2). The advisory sentencing range is set by U.S.S.G. § 2G2.2 and by reference to the statutory sentencing objectives in 18 U.S.C. § 3553(a). Because the district judge departed downward from the advisory § 2G2.2 guideline range and applied the § 3553(a) factors in a procedurally and substantively reasonable manner, we conclude that none of Elmore's arguments justifies overturning his sentence.

**Irreconcilable Reasoning and Result**

Elmore's first argument rests on what he sees as a fatal inconsistency between the district judge's reasoning and the ultimate result he reached. As discussed above, prior to pronouncing the sentence, the judge made several statements favorable to Elmore – recognizing, for example, a concern that Elmore not be punished more harshly for having suffered an abusive childhood, noting Elmore's amenability to treatment, and taking into account his minimal criminal record. Elmore claims that a 51-month sentence does not logically follow from these premises. In particular, Elmore interprets the district judge's comments about his history of childhood abuse to indicate that an even more lenient sentence would have been appropriate in his case. We conclude that Elmore has simply misread the significance of the judge's comments.

Far from suggesting an arbitrary sentencing decision, the transcript of the sentencing hearing indicates a careful and conscientious attempt to balance the "often compelling conflicting considerations that come into play in child pornography cases." *See United States v. Rothwell*, 847 F. Supp. 2d 1048, 1050 (E.D. Tenn. 2012) (describing competing factors in child-pornography sentencing). That such "conflicting considerations" arose during Elmore's sentencing hearing is no surprise, given Elmore's complicated personal history. More generally, a degree of internal dissonance in

Elmore's sentencing decision was likely unavoidable, given the inherent conflicts between the various § 3553(a) sentencing factors that the judge was required to consider. For instance, the requirement that courts impose a "just punishment" with regard to the individualized "nature and circumstances of the offense and the history and characteristics of the defendant" stands in some tension with their duty to "avoid unwarranted sentence disparities among defendants with similar records." 18 U.S.C. §§ 3553(a)(1), (2)(A), (6). Scholarship has identified other internal conflicts within the § 3553(a) factors as well. *See* William W. Berry III, *Discretion Without Guidance: The Need to Give Meaning to § 3553 After Booker and Its Progeny*, 40 Conn. L. Rev. 631, 632 (2008) (exploring "inherent conflicts" among § 3553(a) factors, "each of which likely dictate a significantly different outcome and certainly invoke and likewise forbid consideration of different criteria in sentencing"). Engaging with this tension is not a sign of judicial arbitrariness; rather, it is part and parcel of the basic sentencing inquiry. The record indicates that the district judge did not strike an unreasonable or arbitrary balance between these competing factors in Elmore's case.

Indeed, the dispute regarding Elmore's abusive childhood highlights the way in which the § 3553(a) factors can pull in opposite directions. At the sentencing hearing, defense counsel argued, and the district judge agreed, that Elmore's tragically abusive childhood had left him psychologically damaged and thus less able to control his impulses. From the defense's point of view, this proved Elmore to be less morally culpable than a psychologically undamaged person whose choice to break the law was fully volitional. Accordingly, the defense argued, a "just punishment for the offense" should be correspondingly reduced. *See* 18 U.S.C. § 3553(a)(2)(A). However, as the district judge noted, this circumstance cuts the other way as well. Section 3553(a) requires consideration of additional factors, including public protection and deterrence. *See id.* at § 3553(a)(2)(B)-(C). Elmore's psychologically damaged state, manifested through non-contact pedophilia, "instability of [ ] interpersonal relationships, . . . together with episodic alcohol abuse and impulse control problems," may be seen to reduce his moral culpability, but it also arguably leaves Elmore at an "elevated risk of re-offense." This dichotomy is reflected in the district judge's concern

about "punish[ing] him more because of how he's been victimized," and it was not immediately obvious how it could be reconciled in Elmore's case. The district judge chose to strike a balance that gave Elmore some credit for his unfortunate past (in the form of a below-guidelines sentence and treatment recommendation) but also accounted for the harmful character traits produced by that past. There is no indication that the district judge abused his discretion in doing so, and under our deferential standard of review, we must reject Elmore's first claim.

**The Punishment And Deterrence Sentencing Factors**

Elmore next argues that his sentence was substantively unreasonable because the sentencing judge gave "an unreasonable amount of weight to [two] pertinent factor[s]" – namely, punishment and deterrence – to the exclusion of others. *United States v. Zobel*, 696 F.3d 558, 569 (6th Cir. 2012) (quoting *United States v. Hall*, 632 F.3d 321, 335 (6th Cir. 2011)). Elmore bases this claim largely on the district judge's comment near the end of the sentencing hearing that, because "[Elmore]'s going to get treatment whether he goes away for a long time or doesn't . . . I need to concentrate on what I need to do just to punish him and deter him . . . and deter others."

This argument is no more successful than the first and fails for similar reasons. The record does not indicate that the district judge focused unreasonably on deterrence and punishment. Instead, it shows a sentencing court engaged in a difficult balancing act between the multiple (and sometimes conflicting) factors mandated by § 3553(a). The district judge's comment about punishment and deterrence came only after he had devoted some time to the factors favorable to Elmore, ultimately incorporating several of them into his sentencing calculus, as noted above, and assuring himself that Elmore would receive psychological treatment regardless of the sentencing outcome. That is to say, the district judge did concentrate on the punishment, deterrence, and public safety elements of § 3553(a), but only after having duly considered other relevant sentencing elements more favorable to Elmore as well. This process does not indicate that any particular factor received "unreasonable weight."

In a related vein, Elmore complains that the district judge's emphasis on deterrence and public safety inadequately reflects the defendant's expert testimony showing him to be at an extremely low risk of ever committing another sexual contact offense with a child. The expert did, in fact, testify that Elmore's risk of committing a contact offense is low. Less clear, however, is Elmore's risk of re-offending with a *non*-contact offense (downloading more child pornography, for instance). Dr. Scronce did not address this particular point. Dr. McGregor touched on it in passing, but his testimony was not altogether clear. At one point he admitted that the risk of non-contact offending by child pornography offenders like Elmore is "unknown"; elsewhere he stated that "Internet-only or pornography-only offenders, only about one or two percent of these folks re-offend in any way." Partially corroborating Dr. McGregor, a 2012 United States Sentencing Commission report, cited by Elmore in his brief, shows very low rates of *contact* re-offending, but relatively higher rates for future *non*-contact (and especially non-sexual) offenses.[1] Taken together, the evidence in the record does not demonstrate to a certainty the risk of non-contact re-offending posed by a defendant like Elmore. The risk does not appear to be especially high, but neither is it so small as to be discounted entirely. The point, however, is that the district judge did not abuse his discretion when he considered it as one factor among several in the sentencing calculus, and Elmore has failed to show that this consideration produced a substantively unreasonable result.

Elmore's reliance on *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), does not change this conclusion. In *Dorvee*, the district court presumed that the defendant would inevitably commit a physical-contact sex crime against a child unless he was incarcerated, and, accordingly, sentenced him to a term close to the statutory maximum. *Id.* at 183-84 (invalidating sentence as substantively unreasonable). By contrast, in Elmore's case, the district judge expressly stated that the possibility of future *contact* offenses by Elmore played no part in his sentencing calculation – a decision that did not

---

[1]Child Pornography Offenses, December 2012, at 299-300 *available at* http://www.ussc.gov/ Legislative Public_/__and_Reports/Sex__Topics/201212__Child_Pornography_Offenses.

conflict with Dr. McGregor's testimony that Elmore's risk of contact offending was small.

**"Gut" Intuition Regarding Sentencing Disparities**

Finally, Elmore claims that the district judge imposed a sentence harsher than necessary because he improperly relied on his "gut level of what a reasonable sentence ought to be," and, furthermore, reached this "gut level" by reference to an inappropriate comparator group of cases from within the Sixth Circuit, rather than by reference to national statistics. Relatedly, Elmore also suggests that because first-time child-pornography possession rarely leads to prison, "the court below would not have created too great a disparity – indeed, no disparity at all – if it had sentenced Mr. Elmore to community therapy and treatment programs rather than [prison]." No aspect of this argument has merit.

First, there is no *per se* rule preventing a judge from having a "gut" reaction to the merits of a case, so long as the term "gut" is understood to be informal shorthand for "judicial experience and common sense." *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In the specific context of Elmore's sentencing hearing, it is clear that the district judge's comment should be taken not as a reference to capriciousness but to judicial intuition developed from personal experience sentencing child-pornography defendants. Further, the record shows that the district judge did not consult his "gut" for some arbitrary or improper purpose but, instead, did so in order to satisfy § 3553(a)(6)'s mandate for sentencing uniformity. Using judicial "gut" intuition in this way, to assess a sentence's substantive fairness by reference to comparable offenders, is not acting from "instinctual preference" and does not suggest an arbitrary sentencing result.

In addition to claiming that it is error *per se* to rely on judicial intuition, Elmore contends that the district judge's intuition led to a substantively incorrect result because he did not consider sentencing disparities on a national level. The basis of Elmore's complaint is a statement by the district judge explaining that in order to "treat[ ] people the same," he "keep[s] a list of all the child pornography defendants . . . [and] sort of tr[ies] to figure out where they are in relation to . . . a reasonable sentence." As Elmore

interprets it, this comment shows that the district judge conducted his disparity inquiry under § 3553(a)(6) by reference to a comparator group of child-pornography cases within the Sixth Circuit only, thereby ignoring that section's primary purpose of guarding against "*national* disparities among [defendants] convicted of similar criminal conduct." *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007) (emphasis added). This consideration produced an unreasonably long sentence in his case, Elmore argues, because the median child-pornography sentence in the Sixth Circuit exceeds the national median by a full 12 months. The Sixth Circuit's *mean* sentence, by contrast, is actually one month *below* the national average. *See* United States Sentencing Commission Statistical Information Packet, Table 7 Fiscal Year 2011, Sixth Circuit, *Table 7, available at http://www.ussc.gov/Data and Statistics/Federal_Sentencing_Statistics/State_District Circuit/ 2011/6c11.pdf.* Significantly, Elmore does not explain how the disparity between these two statistics impacts his argument here.

Even on its own terms, however, Elmore's argument cannot succeed. To begin with, Elmore's Sentencing Commission statistics refer without differentiation to *all* child-pornography offenses and, thus, say little about median sentences for child-pornography *possession* under 18 U.S.C. § 2252A(a)(5)(B), the specific offense for which Elmore was convicted. There is no evidence in the record or submitted by the parties indicating the median length of sentences for possession of child pornography in the Sixth Circuit or nationally. Further, it appears that the district judge's reference to his "list of all of the child pornography defendants" refers to the individuals he has sentenced personally, rather than sentencing patterns across the whole of the circuit. Median sentences in the Sixth Circuit may well fall on the harsher side of the national curve, but Elmore has produced nothing indicating that courts in the Western District of Kentucky sentence at the same rate as the Sixth Circuit, or that the district judge in this case sentences comparably to other judges in the district. In short, it is entirely speculative to claim that higher median sentences across the entire circuit translated to an unreasonably high sentence in Elmore's individual case.

Finally, and least convincingly, Elmore argues that first-time convictions for child-pornography possession rarely lead to jail time and that, as a result, a probation-only sentence "would not have created too great a disparity—indeed, no disparity at all." However, this claim is refuted by the very source on which Elmore relies, *i.e.*, a table in a 2011 Federal Sentencing Statistics Sourcebook showing that only 35 percent of first-time offenders whose crime falls within a catchall "other" category receive terms of incarceration.     United States Sentencing Commission, 2011 Sourcebook of Federal Sentencing Statistics, Figure F, *available at* http://www.ussc.gov/Research_and_Statistics/Annual_Reports_and_Sourcebooks/2011/sbtoc11. htm. Offenses are listed by type, with child-pornography possession falling in the "other" category. *Id.* But without a breakdown of the offenses contained within this category, it is obvious that the general 35-percent incarceration rate tells us little about sentencing trends for child pornography specifically. Indeed, according to a different Sentencing Commission report (which Elmore also cites in his brief), fully *96.6 percent* of first-time child-pornography-possession convictions led to at least some prison time. U.S. Sentencing Commission, Report to the Congress: Federal Child Pornography Offenses, Chapter 6.C, *availableat* http://www.ussc.gov/Legislative _and_Public_Affairs/Congressional_Testimonyand Reports/ Sex_Offense_Topics/201212_Federal_Child_Pornography_Offenses/Chapter_06.pdf. Hence, it is simply incorrect to assert that a probation-only sentence would create "no disparity at all." Indeed, in some circumstances we have rejected a probation-only child pornography sentence as unreasonably *lenient*. *United States v. Bistline*, 665 F.3d 758, 765-66 (6th Cir.).

## CONCLUSION

For the reasons set out above, we conclude that the 51-month sentence imposed upon the defendant was, under the facts of this case, substantively reasonable. It bears repeating that a sentence within the applicable guidelines range is presumptively reasonable and that a defendant attacking the substantive reasonableness of a *below-*

guidelines sentence has an even heavier burden to overcome.  Because Elmore has not satisfied that burden, we AFFIRM the judgment of the district court.