NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0191n.06

No. 14-3147

**FILED**
Mar 10, 2015
DEBORAH S. HUNT, Clerk

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| PATRICK ZISKA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

**BEFORE: GIBBONS and STRANCH, Circuit Judges; REEVES, District Judge.**[*]

JANE B. STRANCH, Circuit Judge. Defendant Patrick Ziska pled guilty to knowingly distributing images of child pornography through peer-to-peer software on his computer. On appeal, Ziska brings a procedural challenge to the district court's application of USSG §2G2.2's two-level enhancement for use of a computer and five-level enhancement for the distribution of child pornography in exchange for the receipt of something of value. Ziska also brings a substantive challenge to his sentence, arguing that the district court failed to fully consider his diagnosis of Asperger's disorder. Finally, Ziska contests the district court's imposition of a condition on supervised release that requires his parole officer's written approval before he may

---

[*]The Honorable Pamela L. Reeves, United States District Judge for the Eastern District of Tennessee, sitting by designation.

own or possess any type of camera equipment. We conclude that the district court acted within its discretion with regard to each of Ziska's challenges and therefore AFFIRM Ziska's sentence.

## I. FACTUAL AND PROCEDURAL BACKGROUD

In March 2009, when Ziska was a senior in high school, law enforcement officers executed a search warrant at the home where he lived with his parents. Before obtaining the warrant, FBI agents had used GigaTribe peer-to-peer software to download several dozen images depicting child pornography from Ziska's computer, and an undercover FBI agent became Ziska's GigaTribe friend and chatted with him online. Ziska revealed to the agent that he was an 18-year-old high school student and that he had been using GigaTribe for two years. Upon the execution of the warrant, Ziska initially denied all involvement with child pornography, but after his parents urged him to be honest, he admitted that he had been downloading child pornography since 1999, when he was nine years old. The FBI's search of his computer located 3,384 images and 185 videos depicting child pornography, including images of sex acts between adults and minors under twelve years old, and several images of minors who had been tied up.

Ziska was diagnosed with ADHD when he was in grade school, and was diagnosed with Asperger's Syndrome near the time of his arrest. As a child Ziska had poor social skills, could not interact with children his age, and had difficulty following rules. By high school Ziska had developed an interest in robotics, computer technology, and electronics, and performed well in this field.

In a written statement accepting responsibility for his actions, Ziska indicated that when he first discovered the material at the age of nine, he thought it must be legal because it was online. He claims that by the time he realized child pornography was wrong, he had become addicted to it.

In March 2012, the Cuyahoga County Sheriff's Department executed another search warrant at Ziska's address, and recovered an estimated 2,000 to 3,000 files that could be child pornography. Several weeks later, Ziska was indicted in federal court based on the evidence obtained through the FBI's 2009 warrant. Ziska's federal indictment charged him with distributing visual depictions of a minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2), and with possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). He pled guilty to both counts without a plea agreement.

Ziska's final Presentence Investigation Report (PSR) was filed in January 2014. It included a base offense level of 22 under USSG §2G2.2(a)(2); a two-level increase under §2G2.2(b)(2) for material involving a prepubescent minor younger than 12 years old; a five-level increase under §2G2.2(b)(3)(B) for distributing child pornography with the expectation of "receipt of a thing of value, but not for pecuniary gain"; a four-level increase under §2G2.2(b)(4) for material portraying sadistic or masochistic conduct or other depictions of violence; a two-level increase under §2G2(b)(6) because the offense involved the use of a computer; and a five-level increase under §2G2.(b)(7)(D) because the offense involved more than 600 images.

Based on Ziska's acceptance of responsibility and assistance to the government, the PSR subtracted three levels from this adjusted offense level of 40, leaving Ziska with a total offense level of 37, 15 levels above the crime's base offense level. At the time the PSR was prepared, Ziska had pled guilty to state court charges brought against him based on the evidence obtained in the March 2012 search of his home, but had yet to be sentenced for that crime. He was therefore given one criminal history point under USSG §4A1.1(c), which put him in Criminal History Category I, the lowest level. USSG Ch.5, Pt.A (Sentencing Table). An offense level 37

combined with Criminal History Category I yields a Guidelines sentencing range of 210-264 months. *Id.*

Ziska objected to the offense level calculated in his PSR, arguing that two enhancements were improper—the five-level increase for distribution with the expectation of receipt of a thing of value, and the two-level increase for using a computer in the commission of the offense. He maintains that his total offense level should be 30, which has a corresponding guideline range of 97-121 months. Before sentencing, Ziska filed a sentencing memorandum and attachments under seal arguing his position, and his counsel raised both arguments during the sentencing hearing.

The probation officer supported the five-level increase by including in the PSR the online chat between Ziska and an FBI agent in which Ziska indicated that he blocked users' access to his shared folders when they had nothing to share. The probation officer also noted Ziska's objection to the enhancement for computer use, but declined to change the report, saying she believed the level 37 result was in accord with the intentions of the Sentencing Commission.

In February 2014, the district court sentenced Ziska to a 180-month term of imprisonment on Count 1 and a concurrent 120-month term of imprisonment on Count 2, followed by a ten-year term of supervised release with several conditions, including a restriction on Ziska's ownership or possession of camera equipment without the written approval of his probation officer. At sentencing, Ziska's counsel renewed his objections to the two sentencing enhancements and stressed that a downward variance based on Ziska's Asperger's diagnosis would be appropriate, but did not object to the restrictions placed on his ownership and possession of photographic equipment during the supervised release period. Final judgment was entered and this timely appeal followed.

## II.  ANALYSIS

### A.  The Reasonableness of Ziska's Sentence

"We review sentences under a deferential abuse-of-discretion standard." *United States v. Walters*, 775 F.3d 778, 781 (6th Cir. 2015) (citing *Gall v. United States*, 552 U.S. 38, 41 (2007)). "To determine whether a district court abused its discretion, we look to whether the sentence is reasonable." *Id.* (citing *Gall,* 552 U.S. at 46).  "Sentences must be both procedurally and substantively reasonable." *Id.* (citing *Gall,* 552 U.S. at 51).  Here, Ziska alleges that his sentence was both procedurally unreasonable and substantively unreasonable.  We consider each of these allegations in turn.

### 1.  Procedural Reasonableness

"Procedural reasonableness review begins with a robust review of the factors evaluated and the procedures employed by the district court in reaching its sentencing determination." *United States v. Cunningham*, 669 F.3d 723, 728 (6th Cir. 2012) (internal quotation marks removed).  A district court abuses its sentencing discretion if it commits a significant procedural error, such as failing to calculate the Sentencing Guidelines range, treating the Guidelines as mandatory, ignoring the factors listed in 18 U.S.C. § 3553(a), basing the sentence on clearly erroneous facts, or failing to adequately explain the chosen sentence.  *Gall*, 552 U.S. at 51; *Walters*, 775 F.3d at 781.  With regard to procedural reasonableness, we review the sentencing court's legal conclusions de novo, and its factual findings for clear error.  *Cunningham*, 669 F.3d at 728.  Whether the district court properly applied a sentence enhancement under the Guidelines is a matter of procedural reasonableness. *Walters*, 775 F.3d at 781.

Here, Ziska argues that the district court committed two distinct sentencing-enhancement errors that amounted to procedural unreasonableness—the two-level increase for using a

computer, and the five-level increase of distributing child pornography for something of value other than pecuniary gain.

a.  The two-level enhancement for use of a computer under USSG §2G2.2(b)(6)

Ziska argues that the district court's decision to apply a two-level increase to his offense level for the use of a computer (1) constitutes impermissible "double counting" because his charged offense already contemplates the use of a computer to commit it, and (2) is improper because it applies in almost every case of possession, receipt, or distribution of child pornography, and therefore fails to achieve a meaningful separation between low-grade offenders and those who pose a higher threat to the community.

"Double counting occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways."  *Walters*, 775 F.3d at 782 (internal quotation marks removed).  "[N]o double counting occurs if the defendant is being punished for distinct aspects of his conduct."  *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010).  Double counting is permitted where "it appears that Congress or the Sentencing Commission intended to attach multiple penalties to the same conduct."  *Id.*

Here, Ziska's indictment charged him under 18 U.S.C. § 2252(a)(2), which targets the receipt or distribution of a visual depiction of a minor engaging in sexually explicit conduct "by any means including by computer," and under 18 U.S.C. § 2252A(a)(5)(B), which targets the possession of child pornography regardless of what medium it is in or whether it had been transported through the mail, transferred with a computer, or exchanged through other means. The applicable Sentencing Guideline for both statutes is USSG §2G2.2, which assigns a base offense level of 22 to § 2252(a)(2) and 18 to § 2252A(a)(5)(B).  USSG §2G2.2(a)(1), (a)(2).  The base offense levels listed in §2G2.2(a) do not require that a computer be involved in the

offense—only §2G2.2(b)(6), the two-level computer use enhancement that Ziska argues amounts to double-counting, requires a showing of computer use.

Ziska would have violated the statutes under which he was charged—and been subject to base offense levels of 22 and 18 for those violations—regardless of whether he used a computer. The two-level enhancement targeted his use of a computer in the commission of the crime, a distinct aspect of his conduct. Application of the two-level enhancement for computer therefore does not constitute double counting under *Walters* and *Battaglia*.

We turn now to Ziska's second argument, that the computer use enhancement should not apply because virtually every offender uses a computer to commit the crime. This is not a strict "double counting" argument that focuses on the text of the statutes and Guidelines. Rather, it is concerned with the practical effect of the Guidelines' implementation over time: though only a minority of offenders committed the offense with a computer when the enhancement was first promulgated, now almost all of them use a computer to do so.[1] Based on this shift, defendants frequently argue that "the enhancement is, for all intents and purposes, part-and-parcel of the offense." *See, e.g., United States v. Marshall*, 870 F. Supp. 2d 489, 494 (N.D. Ohio 2012). Some district courts have on that basis declined to apply the enhancement. In *United States v. Elmore*, for example, we noted that the district court had "removed the two-level enhancement for use of a computer" though it "agreed that there 'was a legal basis on that [enhancement].'" 743 F.3d 1068, 1071 (6th Cir. 2014). The district court in *Marshall* also opted not to apply the enhancement, cataloguing numerous policy grounds for its decision. 870 F. Supp. 2d at 493-95.

---

[1]When the computer-use enhancement was first introduced, only 28% of offenders used computers. As of 2011, nearly 97% of offenders were using computers. *United States v. Marshall*, 870 F. Supp. 2d 489, 494 (N.D. Ohio 2012) (citing Troy Stabenow, *A Method for Careful Study: A Proposal for Reforming the Child Pornography Guidelines*, 24 Fed. Sent'g Rep. 2, 122 (2011)).

In *United States v. Klepper*, the district court also declined to apply the PSR-recommended computer enhancement, but applied other Guidelines-recommended enhancements. 520 F. App'x 392, 393 (6th Cir. 2013). When the plaintiff appealed to challenge the other enhancements, we noted that the "district court here plainly recognized its authority to reject application of the enhancements, as it did with regard to the enhancement for use of a computer." *Id.* We affirmed, holding that "[o]ther courts, including our own, have noted that a district court may vary from the Guidelines based on a policy disagreement, but it is not required to do so." *Id.*

Ziska's argument concerning the application of the computer use enhancement fails based on this reasoning. "[T]he fact that a district court *may* disagree with a Guideline for policy reasons and *may* reject the Guidelines range because of that disagreement does not mean that the court *must* disagree with that Guideline or that it *must* reject the Guidelines range if it disagrees." *United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011) (emphasis in original); *see also Cunningham*, 669 F.3d at 733 (holding that "a district court is entitled to rely on the §2G2.2 enhancements unless it has a reasonable policy basis for not doing so"). *Brooks* and *Cunningham* are dispositive in the instant case: the district court had the discretion to apply the Guidelines' two-level enhancement for computer use.

District courts may of course choose to exercise their discretion and depart from §2G2.2 on reasonable policy grounds as long as the basis for doing so is adequately explained. *Cunningham*, 669 F.3d at 733; *see also Kimbrough v. United States*, 552 U.S. 85 (2007). It is counsel's responsibility to bring pertinent policy considerations such as those raised in the Sentencing Commission report on the child pornography guidelines to the attention of district courts when they are applicable. *See Walters*, 775 F.3d at 787 (White, J., concurring) (referring

to a 2012 Sentencing Commission report that raised policy concerns about the application of the child pornography guidelines, "Federal Child Pornography Offenses," United States Sentencing Commission, available at: http://www.ussc.gov/news/congressional-testimony-and-reports/sex-offense-topics/report-congress-federal-child-pornography-offenses). District courts must give policy-based arguments due consideration once they are raised. This court has the far more limited role of determining whether a district court abused its discretion when deciding whether to invoke a policy-based deviation from the suggested Guidelines range.

Because the district court here made no mechanical error in its application of the Guidelines, and its decision to invoke the two-level increase for computer use was within its discretion, we affirm its application of the two-level computer use enhancement to Ziska's offense level calculation.

b. The five-level enhancement under USSG §2G2.2(b)(3)(B)

At sentencing, Ziska raised two arguments challenging his five-level enhancement for distributing child pornography in exchange for something of value: first, that he used GigaTribe to obtain child pornography, not to distribute it in exchange for something of value; and second, that the base-level offense already accounted for the harm attributable to distribution.

This court has upheld district court decisions finding that sharing child pornography on peer-to-peer networks such as GigaTribe and LimeWire constitutes distribution. *Walters*, 775 F.3d at 784-85; *United States v. Connor*, 521 F. App'x 493, 500 (6th Cir. 2013). Under the Guidelines, mere distribution of child pornography warrants a two-level enhancement, USSG §2G2.2(b)(3)(F), but a five-level enhancement may be applied when the defendant has distributed child pornography "for the receipt, expectation of receipt, of a thing of value, but not for pecuniary gain," USSG §2G2.2(b)(3)(B). This enhancement "applies where a defendant

distributes child pornography because he or she has received child pornography or expects to receive child pornography in return." *Battaglia*, 624 F.3d at 351 (citing USSG §2G2.2, comment. (n.1) The enhancement does not apply merely because a defendant used a file-sharing program, but "sophisticated and extensive" use of such a program will weigh in favor of the enhancement. *United States v. Hardin*, 437 F. App'x 469, 474 (6th Cir. 2011).

District courts determine the factual bases for sentencing factors by a preponderance of the evidence. *United States v. Ross*, 703 F.3d 856, 884 (6th Cir. 2012). On appeal, this court reviews the district court's factual findings under the clear error standard. *Battaglia*, 624 F.3d at 351.

Here, the uncontested facts in the PSR contain the following online chat exchange between Ziska and an FBI agent posing as a fellow consumer of child pornography:

> Agent: i see a lot of ppl on here don't share anything
>
> Defendant: you dont seem to have much, thats y, they need to see somthin before they give access
>
> Agent: so i gotta share to get stuff back??
>
> Defendant: ya
>
> Agent: makes sense, how do you do it. you boot people who don't share?
>
> Defendant: i usually put peps who have nothing into a seprate area without access to my files untill they explain why they dont have anything, but booting them works too.
>
> Agent: cool. so unless you get something in return, no goodies for them? nice.
>
> Defendant: ohh ya

At sentencing, the district court found that this exchange "says it all" with regard to the applicability of the enhancement and that Ziska "basically buries himself with that." R. 56,

PageID 500.    The court held that Ziska's responses during the chat established, by a preponderance of the evidence, that he distributed child pornography with the expectation that he would receive child pornography in return.   And because the PSR indicates that the FBI's computer search located 3,384 images and 185 videos depicting child pornography on Ziska's computer, the district court was within its discretion to conclude that Ziska's use of GigaTribe was sufficiently "sophisticated and extensive" to warrant the enhancement.

Despite Ziska's argument to the contrary, the five-level enhancement in USSG §2G2.2(b)(3)(B) does not amount to double-counting under the standard we discuss in Section II.A.1.a above.  Ziska's base offense level of 22 under §2G2.2(a)(2) can be applied absent child pornography distribution that amounts to the quid pro quo exchange for something of value contemplated in the enhancement.  The enhancement is not double counting because it does not punish "precisely the same aspect of a defendant's conduct" that the base offense level does. *See Walters*, 775 F.3d at 782.  We therefore affirm application of the enhancement.

**2. Substantive Reasonableness**

We next consider "the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard," taking into account "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51.

Ziska claims his sentence is substantively unreasonable because the district court failed to properly weigh the pertinent sentencing factors listed in 18 U.S.C. § 3553(a).  He argues that though  § 3553(a) requires courts to consider the "history and characteristics of the defendant" and an expert report documenting his Asperger's disorder was submitted, Ziska argues that the district court failed to fully consider how his Asperger's disorder "likely impacted his conduct,"

and erred by not granting him a "significant downward variance" on that basis.  Appellant's Br. 20-21.

A sentence is substantively unreasonable and a remand for resentencing is required if "the district court select[ed] a sentence arbitrarily, base[d] the sentence on impermissible factors, fail[ed] to consider relevant sentencing factors, or [gave] an unreasonable amount of weight to any pertinent factor."  *Elmore*, 743 F.3d at 1072 (internal quotation marks removed). "'Regardless of whether the sentence imposed is inside or outside the Guidelines range,' an appellate court reviews for reasonableness under the same abuse-of-discretion standard."  *Id.* (quoting *Gall,* 552 U.S. at 51).

Ziska's medical expert report submitted prior to sentencing explains that Asperger's disorder is "characterized by severe and sustained impairment in social interaction and the development of restricted, repetitive patterns of behavior, interests, and activities" and that a typical manifestation of the condition is the "development of encompassing preoccupations about a circumscribed topic or interest about which the individual can amass a great deal of facts and information.  These interests and activities are pursued with great intensity often to the exclusion of other activities."  At sentencing Ziska's attorney argued that his Asperger's diagnosis was a factor that should weigh in favor of a downward variance from the guideline range.

At sentencing, the district court walked through each of the § 3553(a) factors in turn and applied them to Ziska's case.  The court referenced Ziska's Asperger's and ADHD diagnoses, but, having earlier noted Ziska's grades in mechanical engineering, stated that Ziska "did not appear to suffer from any diminished capacity.  Quite the contrary."  The court also noted the seriousness of Ziska's offense and that the expert report referenced the high risk of recidivism

for non-contact offenses because Ziska had failed to fully admit to his condition. The court further commented that though Ziska was very young when he started downloading child pornography, it had to think about the victims of pornography, too. Acknowledging that the Guidelines are very high, the court expressed understanding for why some courts looked with disfavor on them, but concluded that Congress intended such sentences due to the harm pornography causes to children and families.

After taking note of Ziska's Asperger's and ADHD diagnoses and considering the § 3553(a) factors, the district court weighed the mitigating circumstances Ziska presented against § 3553(a)'s requirement that the sentence reflect the seriousness of Ziska's offense and the need to protect the public. The court ultimately decided to vary downward from the Guidelines range by 30 months, rather than granting the larger variance that Ziska had proposed. Reasonable minds can disagree about the district court's sentencing here, but because the district court weighed the § 3553(a) factors with care, explained its reasoning, and came to a conclusion that flowed from its analysis, we find that the court did not abuse its discretion.

## B. The Post-Release Restriction on Photography Equipment

In addition to 180 months in custody, the district court sentenced Ziska to a ten-year period of supervised release and imposed several conditions on that release, including the instruction that Ziska "will not own or possess any type of camera, photographic device and/or equipment, including video recording equipment, without the written approval of the probation officer." Ziska objects to this condition on appeal. Because his counsel was given the opportunity to object to it at sentencing, yet voiced no objection at that time, we review for plain error. *United States v. Inman*, 666 F.3d 1001, 1003 (6th Cir. 2012).

To meet the plain error standard or review, Ziska must show that the imposition of this sentencing condition was "(1) an error, (2) that was obvious or clear, (3) that affected his substantial rights, and (4) that affected the fairness, integrity, or public reputation of his judicial proceedings. *Id.* at 1003-04. When a challenge to supervised release is properly raised below, on appeal we consider whether the district court abused its discretion in imposing special conditions. *Id.* (citing *United States v. Brogdon,* 503 F.3d 555, 563 (6th Cir. 2007)). Under the abuse of discretion standard, we first address the procedural component by determining "whether the district court adequately stated in open court at the time of sentencing 'its rationale for mandating special conditions of supervised release.'" *Brogdon*, 503 F.3d at 563 (quoting *United States v. Carter,* 463 F.3d 526, 529 (6th Cir. 2006)). Next, we address the substantive component by determining "whether the 'condition of supervised release is reasonably related to the dual goals of probation, the rehabilitation of the defendant and the protection of the public.'" *Id.* (quoting *United States v. Ritter,* 118 F.3d 502, 504 (6th Cir. 1997)). "The condition must reasonably relate to the nature of the offense and the history and characteristics of the defendant, and 'involve[ ] no greater deprivation of liberty than is reasonably necessary' to serve the goals of deterrence, protecting the public, and rehabilitating the defendant." *Inman*, 666 F.3d at 1004 (quoting 18 U.S.C. § 3583(d)(1)-(2); *Brogdon,* 503 F.3d at 564). The condition must also be consistent with pertinent policy statements issued by the United States Sentencing Commission. *Id.* (citing 18 U.S.C. § 3583(d)(3)). This analysis is also helpful in determining whether plain error occurred in this case. *See id.*

The district court offered no specific rationale for the imposition of the special conditions of supervised release. However, "a sentencing court's failure to expressly explain its reasons for exacting a particular special condition of supervised release will be deemed harmless error if the

supporting reasons are evident on the overall record, and the subject special condition is related to the dual major purposes of probation, namely rehabilitation of the offender and enhancement of public safety." *Brogdon*, 503 F.3d at 564.

Here, the record fails to provide a clear window into the court's supporting reasons for the condition, but it offers some obvious clues. Though the court noted that Ziska had not touched a child, and nothing in the record indicates that Ziska had previously attempted to photograph children, it referenced the doctor's warning of a high likelihood of recidivism. The record also establishes Ziska's significant interest in images of children.

With regard to the substantive component, we find that though Ziska's offense did not involve his use of photographic equipment, his collection of thousands of images of children makes the restriction on his ownership of photography equipment reasonably related to his rehabilitation and the protection of the public. We have voiced our skepticism about the appropriateness of conditions on supervised release that amount to categorical bans on a defendant's access to photo and video equipment, a defendant's ability to rent a post office box or a storage unit, and the defendant's consumption of alcohol (where nothing in the record indicated that the defendant had a history of substance abuse). *Inman*, 666 F.3d at 1005. As we noted in *Inman*, a ban on photo and video equipment is concerning in a world where virtually every mobile phone contains a camera, and there is a possibility that the defendant would want to use a camera in connection with legitimate family or employment activities. *See id.* Here, our concern is diminished to some extent because rather than imposing a blanket restriction on Ziska's use of photography equipment, the district court imposed the less onerous requirement that he obtain the permission of his probation officer before owning or possessing it. It was not an abuse of discretion to determine that case-by-case probation officer approval advances the

goals of deterrence, public protection, and rehabilitation without unduly burdening Ziska's liberty.

The restriction on photography equipment satisfied the substantive requirements for a supervised release condition. The district court did not state its reasons for this condition and the record evidence addressing the procedural prong is admittedly thin, but our review is only for plain error. We are not convinced that the court's procedural shortcomings amount to an "obvious error . . . that affected the fairness, integrity, or public reputation" of the judicial proceedings, as would be required for a finding of plain error. Accordingly, we affirm the district court's imposition of the post-release condition on Ziska.

### III.  CONCLUSION

For the reasons stated above, we AFFIRM the district court's sentencing of Ziska in all respects.