NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0570n.06

No. 17-6382

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Nov 13, 2018 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE EASTERN DISTRICT OF |
| JAIME M. PINEDA, aka Jaime M. Profitt, | ) | KENTUCKY |
|  | ) |  |
| Defendant-Appellant. | ) |  |

**BEFORE: GUY, WHITE, and STRANCH, Circuit Judges.**

The court delivered a PER CURIAM opinion. STRANCH, J. (pp. 7–10), delivered a separate concurring opinion.

PER CURIAM. Jaime M. Pineda challenges the substantive reasonableness of her below-guidelines sentence. As set forth below, we **AFFIRM** Pineda's sentence.

A federal grand jury charged Pineda, along with her husband and another person, with conspiracy to possess with intent to distribute heroin and cocaine base in addition to other offenses. Pursuant to a written plea agreement, Pineda pleaded guilty to two counts of heroin distribution, in violation of 21 U.S.C. § 841(a)(1). Pineda was classified as a career offender based on her prior felony convictions for controlled substance offenses: a 2005 Kentucky conviction for first-degree trafficking in a controlled substance and a 2007 federal conviction for maintaining a drug-involved premises. Pineda's presentence report set forth a career-offender range of 188 to 235 months of imprisonment. Pineda moved for a downward departure from that range, asserting that the career-offender classification overrepresented the seriousness of her criminal history and that her mental

condition, diminished capacity, and family ties and responsibilities warranted a lower sentence. *See* USSG §§ 4A1.3(b), 5H1.3, 5H1.6, 5K2.0, 5K2.13.

At sentencing, the district court denied Pineda's motion for a downward departure. The district court went on to consider Pineda's arguments in light of the sentencing factors under 18 U.S.C. § 3553(a), determining that a 20-month downward variance was appropriate. The district court sentenced Pineda to 168 months of imprisonment and recommended her participation in a dual-diagnosis substance-abuse and mental-health treatment program.

On appeal, Pineda challenges the substantive reasonableness of her sentence. We review the substantive reasonableness of Pineda's sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). "The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010). "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). Given "that a sentence within the applicable guidelines range is presumptively reasonable . . . [,] a defendant attacking the substantive reasonableness of a *below*-guidelines sentence has an even heavier burden to overcome." *United States v. Elmore*, 743 F.3d 1068, 1076 (6th Cir. 2014); *see also United States v. Greco*, 734 F.3d 441, 450 (6th Cir. 2013) ("Although it is not impossible to succeed on a substantive-reasonableness challenge to a below-guidelines sentence, defendants who seek to do so bear a heavy burden."). Pineda has not overcome that burden.

Pineda argues that the district court placed too much emphasis on the deterrent and punitive nature of the career-offender guideline. Citing the Sentencing Commission's report recommending that the career-offender enhancement be reserved for defendants who have committed a "crime of violence," Pineda asserts that low-level drug traffickers like her should not categorically be subject to the career-offender guideline's increased penalties. The district court addressed Pineda's argument: "[T]here has been a movement recently to require perhaps that one of those prior offenses be violent or the offense of conviction be violent, but that's not the status of the career offender provisions now. It's a recommendation." The district court recognized its discretion to depart from the career-offender guideline, but ultimately used the career-offender range as its starting point, stating:

> There has been some argument that has been made recently that perhaps the career offender provisions should be modified to require at least a violent offense, but drug trafficking is very serious and Congress indicated that. It's essentially three-strikes provision for career offender section of the guidelines. It's intended to provide a serious punishment, to provide deterrence, and promote respect for the law.

The district court did not abuse its discretion in using the career-offender guideline as currently written as "the starting point and the initial benchmark" in determining Pineda's sentence. *Gall*, 552 U.S. at 49; *see United States v. Smith*, 881 F.3d 954, 960 (6th Cir. 2018) ("But the career-offender guideline is on the books, and 'the mere fact that a sentencing court has the discretion to disagree with the guidelines on policy grounds does not mean that it is required to do so.'" (quoting *United States v. Ekasala*, 596 F.3d 74, 76 (1st Cir. 2010))).

According to Pineda, the career-offender guideline resulted in a range that was greater than necessary in light of her criminal history and role in the offense. Pineda asserts that she played a minor role, acting as a runner for her husband and selling only a small amount of drugs, and that

her predicate offenses reflect a pattern of being used by others. In addressing whether the career-offender range overstated Pineda's criminal history, the district court commented:

> [T]he thing that really stands out is this defendant continues to engage in the same type of conduct for which she has been punished previously, and she received [a] fairly significant sentence for maintaining a drug premises, but she returned back to the same type of activity, and she returned back to the same individual involved in that matter.

The district court found that Pineda's designation as a career offender did not overrepresent the seriousness of her criminal history, noting not only her qualifying convictions but also her probation violations. As for the instant offense, the district court pointed out that, although Pineda pleaded guilty to two heroin transactions, the drug-trafficking activity in this case went on for several months. The district court considered Pineda's role in the offense and "place[d] her more toward the bottom for these particular defendants in this case." Taking into account Pineda's role in the offense as well as the other § 3553(a) factors, the district court reasonably granted a 20-month downward variance from the career-offender range.

Pineda further contends that the district court did not place enough emphasis on the impact a career-offender sentence would have on her family ties and responsibilities—specifically, the loss of her parental rights. Pineda has seven children, including one born during pretrial incarceration, and her husband will be removed from the United States after serving his sentence in this case. We "generally defer to the 'special competence' of the district court in determining whether family circumstances are so extraordinary as to justify a departure or a variance from a Guidelines sentence." *United States v. Haj-Hamed*, 549 F.3d 1020, 1028 (6th Cir. 2008). Here, the district court recognized the best interest of the children as an important factor and questioned whether it would be in their best interest to place them with a parent who has substance abuse and psychological issues and remains in an abusive relationship. Remarking on the potential damage

to children in situations where their parents are dealing drugs, the district court stated, "Children are not toys. They are not for one person's benefit. They can suffer tremendously by being put in a situation like this, individuals that are engaged in drug trafficking activities." The district court noted that Pineda's children were now cared for by Child Protective Services or relatives and that she needed to "really clean up [her] act" to reassume responsibility for her children. The district judge expressed sympathy for Pineda but had "more sympathy for [her] children" because it was Pineda's criminal conduct that put the children in their current situation. The record shows that the district court considered Pineda's family responsibilities and did not abuse its discretion in determining that those responsibilities did not warrant a greater variance.

Pineda also argues that the district court did not place enough emphasis on the effect of her psychological issues and the potential for treatment. Prior to sentencing, a psychologist evaluated Pineda and diagnosed her with posttraumatic stress disorder, drug and alcohol use disorders, and dependent personality disorder. The psychologist gave the opinion that intensive treatment, "coupled with Ms. Pineda avoiding any contact with Mr. Pineda and other negative influences, will significantly reduce the likelihood of future criminal behavior." The district court expressed concern with the psychologist's opinion about the likelihood of future criminal activity, noting that Pineda had repeatedly returned to her husband and that "if she follows the same pattern in the future as she's followed in the past, then that same activity will reoccur in the future." The district court agreed that Pineda needed treatment and recommended that she participate in a dual-diagnosis substance-abuse and mental-health treatment program. The district court stated: "In varying downward I am hopeful that [the psychologist] is correct, that with appropriate treatment the defendant can avoid re-offending. So I'm cautious but I'm cautiously optimistic that the defendant will avoid the problems going forward and to be able to reform her conduct and reunite

with her children." We cannot say that the district court placed unreasonably little weight on Pineda's psychological issues and treatment potential.

The record shows that the district court thoroughly addressed Pineda's arguments in support of a sentence below the career-offender range and did not give an unreasonable amount of weight to any relevant factor in making its sentencing determination. Although we share some of the concerns expressed by our concurring colleague, we too conclude that Pineda has not overcome the heavy burden of demonstrating that her below-guidelines sentence is substantively unreasonable. Accordingly, we **AFFIRM** Pineda's sentence.

**JANE B. STRANCH, Circuit Judge, concurring.** I join the opinion resolving this appeal based on our precedent. I write separately to explain why I find this resolution troubling.

That Jaime Pineda's sentence was below guidelines makes it no less harsh. She was sentenced to 14 years in prison after pleading guilty to selling a little over a gram of heroin to a confidential informant. She received this lengthy sentence because she was deemed a career offender based on two prior convictions—one for selling a small amount of crack cocaine when she was 18 and another for maintaining drug-involved premises when she was 20. If she had not been found to be a career offender, however, her criminal history and offense level would have resulted in a guidelines range of 15 to 21 months. Her ultimate sentence—168 months—was eight times as long as the high end of this range. And Pineda is the type of non-violent offender to whom the Sentencing Commission has stated the career-offender guideline should not apply. *See* U.S. Sentencing Comm'n, *Report to the Congress: Career Offender Sentencing Enhancements* 25–45 (2016) (arguing that the career-offender enhancement should be reserved for "offenders who have committed a felony 'crime of violence'"); *see also id.* at 35 (noting that "[t]he average sentence in the cases involving drug trafficking only career offenders . . . is nearly identical to the average guideline minimum . . . before the application of the career offender guideline").

At sentencing and again on appeal, defense counsel brought forward a wealth of mitigation material, relevant both to "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). I will not linger over the details but suffice it to say that Pineda was subjected to appalling abuse and neglect as a child. She was also diagnosed by a psychologist with post-traumatic stress disorder and dependent personality disorder. The latter diagnosis is particularly relevant as her husband, with whom she was in an abusive relationship, was also her co-defendant. Yet, toward the beginning of the sentencing

hearing, the district court indicated that information about the defendant's background is only relevant if it is "somehow related to the commission of the offense" rather than an appeal to sympathy. The court summed up: "So those are the things I think about as I go through a person's history and characteristics. Is it related to the offense, and what's the affect [sic] going forward?"

This § 3553(a) factor should not be interpreted so narrowly. Instead, § 3553(a)(1) issues a "broad command" to sentencing courts to consider the backgrounds of the individuals before them. *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007). Sentencing judges must "'consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue.' . . . Underlying this tradition is the principle that 'the punishment should fit the offender and not merely the crime.'" *Pepper v. United States*, 562 U.S. 476, 487–88 (2011) (citations omitted). For this reason, we have repeatedly found information relating to an individual's childhood trauma, mental health, and addiction issues, among other things, to be relevant to sentencing. *See United States v. Banks*, 722 F. App'x 505, 511–12 (6th Cir. 2018) (holding that sentence was procedurally and substantively reasonable when "the district court weighed Banks's personal history and characteristics including his criminal history, difficult childhood, family support, addiction issues, past efforts to reform, and his renewed commitment to rehabilitation"); *United States v. Robinson*, 778 F.3d 515, 523 (6th Cir. 2015) ("Defendant's contentions regarding mental illness, if credible, could qualify as a compelling justification that may support a significant downward variance from the Guidelines range."); *United States v. Ivory*, 558 F. App'x 643, 643–44 (6th Cir. 2014) (holding sentence to be substantively reasonable when the sentencing court "consider[ed] the sentencing factors under 18 U.S.C. § 3553(a), including Ivory's difficult childhood"); *United States v. Ortega-Rogel*, 281 F. App'x 471, 474–75 (6th Cir. 2008) (holding that an above-guidelines sentence was procedurally

and substantively unreasonable based on § 3553(a)(1) factors, including that the defendant "came from poverty"); *United States v. Collington*, 461 F.3d 805, 808–09 (6th Cir. 2006) (holding that a significantly below-guidelines sentence based, among other things, on the defendant's tragic childhood was procedurally and substantively reasonable).

I am concerned that rather than viewing Pineda's mental-health conditions as mitigating, the district court's comments suggest it viewed her PTSD and dependent personality disorder as purely aggravating factors because they made her more likely to reoffend. Nevertheless, I cannot say that the court "fail[ed] to consider pertinent § 3553(a) factors" such that the sentence was substantively unreasonable. *Id.* at 808 (6th Cir. 2006) (quoting *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005)). Despite the court's focus on Pineda's risk of recidivism, it did credit "some of the arguments that have been made in terms of [the] influence of others," the role of substance abuse in her offense, and that there are "two sides" to her. It also observed that Pineda's "role in this offense" was "more toward the bottom for these particular defendants." Given our highly deferential review of the substantive reasonableness of below-guidelines sentences, I cannot say that this sentence rose to the level of an abuse of discretion. *See United States v. Elmore*, 743 F.3d 1068, 1072–74, 1076 (6th Cir. 2014).[1]

I am also troubled by a second aspect of sentencing. The district court appeared to speculate that Pineda had committed additional, uncharged crimes. At the sentencing hearing, the court stated that it viewed defense counsel's argument about the amount of drugs attributed to Pineda as a "little disingenuous." The court noted that though "[t]here's only a small amount attributed to her, a little over a gram for two transactions . . . , for eight months there's some

---

[1] I do not address whether this sentence was procedurally unreasonable because Pineda raises only a substantive unreasonableness argument on appeal.

indication that there was drug trafficking going on. . . . *So if I accept your argument at face value, I have to assume that she didn't do anything else from December until August*." This statement comes perilously close to presuming, without support in the record, that Pineda's offense conduct involved numerous drug sales, not just the two charged. We have reversed sentences as substantively unreasonable when the district court relied on improper speculation about uncharged crimes. *See United States v. Van*, 541 F. App'x 592, 597–98 (6th Cir. 2013); *United States v. Wright*, 426 F. App'x 412, 415–17 (6th Cir. 2011); *United States v. Worex*, 420 F. App'x 546, 549–51 (6th Cir. 2011). Indeed, under our binding precedent, "it does not matter that the district court relied on a number, even a large number, of relevant facts in its sentencing, if it also relied on facts that it could not properly consider." *United States v. Hunt*, 521 F.3d 636, 649 (6th Cir. 2008). But the record does not indicate that the court *relied* on such speculation in determining Pineda's sentence. More importantly, Pineda has not raised this issue on appeal.

I therefore, with reluctance, join the court's opinion affirming Pineda's sentence.